445 A.2d 1282

**Robert J. FERENCAK and Patricia L. Ferencak, His Wife**

v.

**Charles R. MOORE and Elizabeth A. Moore.**

**Appeal of Elizabeth A. MOORE.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1982.

Filed May 21, 1982.

Bonnie P. Schlueter, New Kensington, for appellant.
Timothy J. Geary, Vandergrift, for appellees.

Before HESTER, BECK and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is an appeal from a custody order involving two minor children: Charles R. Moore, Jr., now five (5) years old and Jerrah Moore, now seven (7) years old. The parties involved are: Robert J. and Patricia L. Ferencak, paternal grandparents of the children, appellees herein; Elizabeth A. Moore, natural mother of the children, appellant herein; Charles R. Moore, Senior, natural father of the children; and Dolores Burkett, maternal grandmother and Leland Burkett, maternal step-grandfather (hereafter referred to as maternal grandparents of the children).

Charles Jr. has been living with his paternal grandparents since June 4, 1979, prior to this time he lived with his

parents or his mother. The natural mother and father were divorced on March 17, 1980. On May 14, 1980, the paternal grandparents filed a petition seeking custody of the two children. On June 30, 1980, the matter was continued to allow for the preparation of home studies. On July 14, 1980, the case was continued to August 28, 1980. On August 28, 1980, all of the above parties appeared, except for the natural mother; she had moved to California taking her daughter Jerrah with her. The natural father did not contest his parents' petition. The court heard testimony from the paternal grandmother and continued the case to December 10, 1980. On December 10, 1980, the natural mother appeared and the hearing was resumed. The case was continued until December 30, 1980 when the court finished hearing testimony. The lower court entered an order on January 13, 1981 awarding custody in the following manner:

1) Custody of Charles, Jr. was awarded to the paternal grandparents;

2) Custody of Jerrah was awarded to the natural mother, conditioned on

a. her residing with the maternal grandparents; and

b. Jerrah's non removal from Westmoreland County without permission of the court; and

3) that visitation between the parties be arranged.

Appellant raises three issues on appeal.

I. Whether the findings of facts of the trial court are supported by the record?

If the issue is whether we should reverse the lower court's findings of fact, then indeed we must defer to the lower court, and reverse only where in making the findings the lower court has abused its discretion. This is so because the lower court saw the witnesses and is therefore much more able to appraise their credibility than we. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). However, "we are not bound by [the lower court's] inferences or deductions ... from the facts

found." *In re Custody of Hernandez, supra,* 249 Pa.Superior Ct. at 290, 376 A.2d at 656.

*Commonwealth ex rel. Berman v. Berman,* 289 Pa.Superior Ct. 91, 432 A.2d 1066 (1981).

Appellant challenges findings numbered 16, 17 and 25.

No. 16. "Thereafter, the said A. Moore went to the State of Florida with the said Jeff McKristy ostensibly to obtain a job, but returned in approximately September or October and regained custody of Jerrah Moore from her mother." Thereafter refers to sometime after early June of 1979. Jeff McKristy, was at that time appellant's fiance. Charles, Jr. remained at that time in the custody of the paternal grandparents, and Jerrah was left with the maternal grandparents.

We must agree with appellant that finding No. 16 is not totally accurate. Unchallenged testimony established that appellant left in the middle of June 1979 for Florida and returned on July 5, 1979. (N.T., p. 166; N.T. 8/28/80, p. 9)[1] While appellant reassumed full custody of Jerrah in October 1979, uncontested testimony established that when appellant returned from Florida she resided, with Jerrah, at her parents' home, for a couple of weeks. She then moved into an efficiency apartment where she cared for Jerrah during the day. In October 1979, appellant obtained larger living quarters and took Jerrah back on a full time basis (N.T. 106–107).

No. 17. "In February 1979 the said Elizabeth A. Moore was convicted in the Armstrong County and Westmoreland County Courts of criminal conspiracy and possession with intent to deliver cocaine and marijuana and sales of cocaine, all felonies, resulting in a period of three-years probation."

Appellant was not convicted of possession with intent to deliver. She was convicted of three counts of conspiracy pertaining to the sale of drugs (all three were felonies).

---

1. Two volumes of testimony were transcribed, one contains testimony taken on 8/28/80, that volume will be referred to as "N.T. 8/28/80"; the other volume contains testimony from several other days, that volume will be referred to as "N.T.".

(N.T., pp. 22, 158). There were no indications that appellant herself either used drugs or was actively involved in trafficking such (N.T., pp. 30–31, 155).

No. 25. "The natural mother has demonstrated a certain unstable conduct raising serious questions concerning her ability to properly care for and maintain the minor child Jerrah Moore without the proper supervision."

We believe this finding is actually a deduction arrived at from the facts presented. Such will be discussed later in this opinion. Due to our disposition of this case as a whole, no further discussion of the above factual discrepancies is necessary.

II. Whether the paternal grandparents met their burden of proof for obtaining custody?

Both the Supreme Court and this court have addressed the issue of a parents right to custody vis-a-vis the right of grandparents to the custody of the same children. In resolving this dilemma, Judge Spaeth set forth the following approach in *In Re Hernandez*, 249 Pa.Superior Ct. 274, 284, 376 A.2d 648, (1977) which was adopted by the Supreme Court in *Ellerbe v. Hooks*, 490 Pa. 363, 367–368, 416 A.2d 512 (1980).

> "When the judge is hearing a dispute between the parents, or a parent, and a third party, . . . [t]he question still is, what is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." (Footnote omitted)

"[T]hese principles do not preclude an award of custody to the non-parent. Rather . . . the non-parent bears the bur-

den of production and the burden of persuasion and that the non-parent's burden is heavy". 490 Pa. at 368, 416 A.2d 512. An associated principle, pertinent to the current appeal is the law's preference that siblings be raised together absent "compelling reasons to the contrary". *See Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 327, 421 A.2d 157 (1980) and cases cited therein.

The lower court relied on the following facts, based on the testimony given, to find that the natural mother had "demonstrated a certain unstable conduct". She had been convicted of three counts of criminal conspiracy resulting in three years probation. Appellant had three children born of a prior marriage; they are in the custody of their paternal grandparents and the appellant seldom sees, visits or attempts to visit them. "There [had] been very little visitation or contact by the natural mother with her son Charles R. Moore, Jr." (Findings of Fact, No. 10) The mother's then fiance was, at the time of the court's order, starting on a six-month cruise with the United States Navy.

The court was "impressed" with the paternal grandparents' love and interest in Charles, Jr. and found them to be suitable parties to maintain custody of Charles, Jr. The court noted that it originally felt that Jerrah should also be placed with her grandparents, but as she has lived most of her life with her mother, the grandparents had not developed a lasting relationship with her. The court found that the natural mother had a poor relationship with her son and had failed to show an interest in him. The paternal grandparents could offer a "wholesome and moral environment" for the child and the court would not disturb the stability of Charles, Jr.'s life with his grandparents.

In contrast, the court found the natural mother offered a "chaotic life". After the action had been initiated, she admittedly left Pennsylvania with her daughter, fearing she would lose her daughter. While she resided in California she resided in three separate places within a short span of time. The last of the three residences she and her fiance shared with another unmarried couple. Prior to the move to

California, appellant in June 1979 had left for Washington, D. C. with her previous fiance, leaving the two children to be supervised by a seventeen (17) year old babysitter.[2]  Appellant returned to Pennsylvania and subsequently departed later in June 1980, (Charles, Jr. remained with the father's parents and Jerrah with the mother's parents) with her prior fiance for Florida and returned a few weeks later.  Thereafter she went to California with her new fiance taking Jerrah with her.  The court therefore felt justified in questioning the stability and morality of the environment appellant had to offer.  The court hesitantly granted custody of Jerrah to her mother based on the mother living with her parents whom the court felt would act as a safeguard for the well being of the child.  The paternal grandparents living nearby would permit the two children to visit.

A brief review of the various similar factual situations previously faced by the courts of the Commonwealth will assist in explaining our disposition here.

In *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980) the Supreme Court upheld the trial court's grant of custody to the maternal grandparents over the natural father's objection.  There the children had experienced a chaotic early childhood and the grandparents' home was the sole stabilizing influence.  Two of the children had lived with their grandparents for four years, up to 1972.  The mother had a third child to a second marriage.  She took custody of the two prior children in 1972.  During the period of 1972–1978 the three children resided with the mother during the week.  Three of the four weekends of the month they stayed with their grandparents;  the remaining weekend, the first two children visited their father.  All three spent the summers with their grandparents.  When the mother died during the summer of 1978 the boys were living with their grandparents.  The court recognizing the adverse effect caused by the disruption of the relationship

---

2.  It was on this occasion that Charles, Jr. was bitten by a dog and as a result eventually came into the custody of his paternal grandparents.

with the grandparents and the strong policy of raising siblings together affirmed the custody in the grandparents.

Similarly, in *Ellerbe v. Hooks,* supra, the court was unwilling to disturb the grandmother's custody of an eleven (11) year old child who had lived with her grandmother since she was two years old.

This court, in *Dile v. Dile,* 284 Pa.Superior Ct. 459, 426 A.2d 137 (1981), affirmed the lower court's award of custody to the paternal grandmother over the natural mother. The mother was living with a man who had an extensive and varied criminal record. Both the mother and her male friend had some history of drug use. The mother and her companion shared a five (5) bedroom house with five other members of his family. The mother had previously lived with another woman who had children and stood by without objecting while a truant teenage babysitter drank beer in the residence. The mother did not even object when the babysitter mixed drugs and beer, resulting in an overdose requiring hospitalization. Viewing all the circumstances together, the court found a sufficient showing of "convincing reasons".

In contrast this court in *Palmer v. Tokarek,* 279 Pa.Superior Ct. 458, 421 A.2d 289 (1980) granted the natural father custody of an eight (8) year old instead of contending maternal grandparents. For five years the child and his mother lived with the grandparents. The mother in 1976 moved out of state taking the child with her. The child was returned to the care of the grandparents when he failed to adjust to the new environment. Throughout this period the father exercised visitation rights; several times relying on enforcement procedures to do so. The father had remarried. Though the child expressed his preference to remain with his grandparents, the court decided otherwise. There was conflicting expert testimony as to the potential psychological effect a change in custody could have on the child. The court found "this preference for consistency must be outweighed by the right of the natural parents to custody. Therefore, we conclude that the fact that [the child] has

been well cared for and loved by his grandparents, and that he prefers to remain with them does not amount to such convincing reasons as would overcome the father's right to have [the child] with him". 279 Pa.Superior at 295, 421 A.2d 289. Claims that the father used profanity or was prone to use violence was not supported by the record; there was no evidence that the father swore in the child's presence or was violent in front of or toward the child.

After comparing the present case to the precedent discussed above, we find that the appellee-paternal grandparents have failed to establish "convincing reasons" for placing Charles, Jr. with them; however this is not to say that custody of Jerrah and Charles, Jr. should be awarded to the natural mother. At the time of the court's order, Charles, Jr. had been residing with his paternal grandmother for approximately nineteen (19) months. This period is in sharp contrast with *Albright* (4 years with grandparents, followed by 6 years shared between mother and grandparents); *Ellerbe* (9 years with grandmother); and *Palmer* (father gained custody even though children resided with grandparents for greater portion of 8 years).

However, we may not overlook the lower court's finding that appellant's desire to visit Charles, Jr. appeared to be somewhat limited.[3] Nor can we or should we ignore appellant's criminal record, her nomadic tendencies, and changing living arrangements. However, the trial court failed to inquire into the effect such factors had upon the children.[4]

> The [parents'] right to custody is forfeitable only by misconduct or other factors which substantially effect the child's welfare. (Citations omitted) Because [appellees] have not shown that the alleged misconduct of the [parent] in any way affects the [children's] welfare, we hold that such conduct cannot be said to bear on the [parent's] right to custody.

**3.** Appellant contends she did not attempt more strenuously to visit Charles, Jr. because she believed appellees would prevent such.

**4.** No testimony concerning the psychological impact of the questionable behavior upon the children was presented. Also the court refused to talk with Jerrah and Charles, Jr. (N.T., p. 189).

*Palmer,* 279 Pa.Superior Ct. at 472, 421 A.2d 289. See also *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 298, 426 A.2d 555 (1981); and *Jones v. Floyd,* 276 Pa.Superior Ct. 76, 419 A.2d 102 (1980).

Additionally, while the hearing court, did demonstrate that it considered the sibling relationship between Jerrah and Charles, Jr. by ordering visitation to "establish and maintain a lasting relationship," we believe the court did not adequately address such. As previously mentioned the policy that siblings should be raised together is strongly entrenched. *Albright,* supra.

> However, while strong, this policy in favor of raising siblings together is not inflexible. It is rather a policy to which the hearing judge must always give careful attention in determining—and this policy is inflexible—what is in the best interest of the child. See *Tobias v. Tobias,* 248 Pa.Superior Ct. 168, 374 A.2d 1372 (1977).

*In Interest of Tremayne Quame Idress,* 286 Pa.Superior Ct. 480, 429 A.2d 40 (1981). The hearing court justified the split custody of the two children on the grandparents' bond with Charles, Jr., which did not exist with Jerrah. We find that in the circumstances of this case such is not adequate to cause siblings to be raised apart. A court must also look to the relationship between the siblings themselves and benefits of such relationship.

We find it necessary to remand for further proceedings regarding the impact of appellant's behavior upon the children and for further consideration of the sibling relationship.

III. Whether the court abused its discretion in placing restrictions upon appellant's custody of Jerrah?

A trial court has the authority and power to impose conditions upon a grant of custody. *Lewis v. Lewis,* 271 Pa.Superior Ct. 519, 414 A.2d 375 (1979); *Commonwealth ex rel. Ashfield v. Cortes,* 210 Pa.Superior Ct. 515, 234 A.2d 47 (1967). But, "the court must not, under the rubric of protecting the best interest of the child, interfere too much with the parent's care and custody". *In Re Custody of*

*Frank,* 283 Pa.Superior Ct. 229, 247, 423 A.2d 1229, 1239 (1980). Nor, should a custodial condition unduly interfere with the custodian's freedom of movement. *Commonwealth ex rel. Steiner v. Steiner,* 257 Pa.Superior Ct. 457, 390 A.2d 1326 (1978).

Appellant first complains of the condition requiring her to live with her parents. We need not address the propriety of such condition. Appellant's notice of appeal was filed with the lower court on January 23, 1981 at 1:53 P.M. Appellant filed a petition for supersedeas requesting the court stay the condition that appellant reside with her parents; this petition was clocked in at 3:22 P.M., January 23, 1981. The court granted such petition on January 23, 1981, at an unknown time. Under Rule 1701 Pennsylvania Rules of Appellate Procedure the trial court is divested of its jurisdiction during the pendency of an appeal. *Commonwealth v. Gottshalk,* 276 Pa.Superior Ct. 102, 106 n.5, 419 A.2d 115 n. 5 (1980).

As the petition was filed after the notice of appeal, the court was without jurisdiction to modify its order. Nonetheless we believe it is not necessary or desirable to decide the merits of the substantive claim. As the lower court has already indicated that it was agreeable to a modification of its order and we must remand for other reasons, we find it preferable that the lower court first reconsider such condition on remand.

Appellant's final contention is that since the court restricted her from leaving the jurisdiction, appellees' custody of Charles, Jr. should likewise have been conditioned. Appellant argues that the purpose behind such condition is to facilitate the sibling relationship and visitation, therefore Charles, Jr. should not be removed from the jurisdiction. Appellant relies on *Davidyan v. Davidyan,* 230 Pa.Superior Ct. 599, 606, 327 A.2d 145, 149 (1974).

We tend to agree with appellant-mother's position. While we find no fault with conditioning a parent's custody upon allowing grandparents to visit with the child, *In Inter-*

*est of Tremayne Quame Idress R.,* supra,[5] we believe grand-parents' custody should be, in appropriate circumstances, likewise restricted to allow for parental visitation. A technical application of the lower court's custody order could result in the absurd situation of appellant being forced to remain in the Commonwealth with Jerrah while appellees take Charles, Jr. outside of Pennsylvania. We believe this potential result is contrary to the intent of the hearing judge and direct the lower court to address this apparent inconsistency on remand.

The order of the lower court is vacated and remanded to the court below for proceedings not inconsistent with this opinion. The parties shall be granted leave to present evidence as to a change in circumstances occurring since the trial court entered its order of January 13, 1981. We do not retain jurisdiction.

BECK, J., concurs in the result.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

I concur with the finding of the majority to the effect that it is necessary to remand for further proceedings regarding the impact of appellant's (Elizabeth A. Moore, the mother of the children) behavior upon the children and for further consideration of the sibling relationship.

I respectfully dissent from that portion of the majority opinion which holds that: "the appellees-paternal grandparents, have failed to establish 'convincing reasons' for placing Charles, Jr. with them . . . ."

I am of the opinion that the record before us clearly demonstrates that it is in the best interests of both children that neither of them be placed in the custody of the mother-appellant. The lower court understated the case when it concluded that "the natural mother has demonstrated a

5. The legislature has by statute granted grandparents such right under certain circumstances. See Act of Nov. 5, 1981, P.L. 322, No. 115 § 14, effective in 60 days.

certain unstable conduct raising serious questions concerning her ability to properly care for and maintain the minor child Jerrah Moore without proper supervision." Her three felony convictions of drug trafficking; her complete failure to demonstrate any natural love, care and affection for her three children born of a prior marriage; her failure to visit those children; her tendency to move around the country with a variety of male companions; her constant changing living arrangements; leaving the two children involved in this appeal to be supervised by a 17-year old babysitter while she, the appellant, went to Washington, D. C. with a male companion; her limited desire to visit her son Charles, Jr. and her failure to show an interest in him. All of the foregoing facts are not in dispute. Not only do they demonstrate unstable conduct, raising serious questions concerning appellant's ability to properly care for her daughter Jerrah Moore, they constitute characteristics and conduct that would not be in the best interests of the minors involved.

I concur that remand is necessary.