451 A.2d 781

**COMMONWEALTH of Pennsylvania ex rel. Alfred A. DAVENPORT**

v.

**MONTGOMERY COUNTY CHILDREN & YOUTH SERVICES**

**and**

**Joseph Zdun and Ada Zdun, h/w and Kathy Ann Davenport.**

**Appeal of Alfred A. DAVENPORT.**

Superior Court of Pennsylvania.

Argued March 31, 1982.

Aug. 27, 1982.

Rehearing Denied Nov. 12, 1982.

Petition for Allowance of Appeal Granted Feb. 17, 1983.

Francis T. Dennis, Conshohocken, for appellant.

Catherine M. Lecky, King of Prussia, for Zdun, appellees.

Norman A. Klinger, Norristown, for Kathy Davenport, appellee.

Before WIEAND, McEWEN and POPOVICH, JJ.

WIEAND, Judge:

After a full hearing in which a natural mother conceded that she could not care for a four-year-old daughter, the court awarded custody of the child to maternal grandparents in preference to the natural father. The father appealed. We reverse.

Kathy Ann Davenport, a female child, was born January 16, 1977. Her parents, who had been married on May 20, 1976, were separated in June, 1978 and divorced on December 6, 1979. Upon separation, Kathy Ann remained in the custody of her mother who, in turn, resided with her parents, Joseph and Ada Zdun. This housing arrangement continued until April, 1979, when Kathy Ann and her mother moved into an apartment in Norristown. They were joined there in December, 1979, by the mother's boyfriend. On January 17, 1980, because of confirmed reports of child abuse, Kathy Ann's mother signed a voluntary placement agreement giving custody of her daughter to Children & Youth Services of Montgomery County (CYS). That agency placed Kathy Ann with her maternal grandparents. On February 22, 1980, Kathy Ann was declared a dependent child by the Juvenile Division of the Court and placed in the temporary custody of CYS with the understanding that she would continue to reside with her maternal grandparents.

On May 14, 1980, Alfred A. Davenport, Kathy Ann's father, who had learned that his daughter was in the custody of CYS, filed a petition for custody. The maternal grandparents filed a cross-petition, and Kathy Ann's mother intervened. On July 17, 1980, following hearings, temporary custody was awarded to Alfred A. Davenport, Kathy Ann's

father, but with partial custody in Kathy Ann's mother during the three days each week that her employment did not require her to be away from home.

On January 2, 1981, the maternal grandparents filed a new petition seeking custody of Kathy Ann Davenport. After hearing, an order was entered which awarded custody of Kathy Ann Davenport to her maternal grandparents but with visitation rights to the father.

As a general rule, a change in custody must be based upon a showing of a change in conditions. *Commonwealth ex rel. J.J.B. v. R.A. McG.,* 283 Pa.Super. 185, 188, 423 A.2d 1050, 1052 (1980); *Commonwealth ex rel. Swanson v. Barry,* 199 Pa.Super. 244, 247, 184 A.2d 370, 372 (1962). At the time of the second hearing, Kathy Ann Davenport's mother was unemployed and did not have an apartment in which to live. The trial court also found that the joint custody arrangement previously ordered had not worked satisfactorily and that the child was being harmed by the constant shifting from household to household. This was adequate reason to review and alter the original custody order.

In *Ellerbe v. Hooks,* 490 Pa. 363, 367–368, 416 A.2d 512, 513–14 (1980), the Supreme Court adopted the rule articulated for the Superior Court by Judge Spaeth in *In Re Custody of Hernandez,* 249 Pa.Super. 274, 286, 376 A.2d 648, 654 (1977), as follows:

> When the judge is hearing a dispute between the parents, or a parent, and a third party, . . . [t]he question still is, What is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty

enough to bring the scale up to even, and down on the third party's side.

See also: *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980); *Ferencak v. Moore,* 300 Pa.Super. 28, 32, 445 A.2d 1282, 1284 (1982).

The scope of review in custody cases is broad. *Albright v. Commonwealth ex rel. Fetters, supra,* 491 Pa. at 324, 421 A.2d at 158; *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 443, 292 A.2d 380, 383 (1972); *Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 59, 169 A.2d 69, 71 (1961); *Commonwealth ex rel. Berman v. Berman,* 289 Pa.Super. 91, 432 A.2d 1066 (1981). "Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the fact-finding functions of the court of the first instance." *Albright v. Commonwealth ex rel. Fetters, supra,* 491 Pa. at 324, 421 A.2d at 159. See also: *Commonwealth ex rel. Bendrick v. White, supra* 403 Pa. at 59, 169 A.2d at 72; *Ferencak v. Moore, supra; Commonwealth ex rel. Bowser v. Bowser,* 224 Pa.Super. 1, 4, 302 A.2d 450, 451 (1973). This is because the trial court has had an opportunity to observe the witnesses and is, therefore, much better able to appraise their credibility. However, we are not bound by the conclusions or inferences drawn from those facts by the trial court. *Ferencak v. Moore, supra; Commonwealth ex rel. Berman v. Berman, supra,* 289 Pa.Superior Ct. at 93, 432 A.2d at 1067; *In Re Custody of Hernandez, supra,* 249 Pa.Superior Ct. at 290, 376 A.2d at 656.

■ Here, the trial court concluded that during the period of joint custody, appellant "did not do a very good job raising Kathy Ann Davenport as a parent." This conclusion was based on a Sunday morning incident during which he "got into a quarrel with [Kathy Ann] which lasted some four hours, simply because the child wanted to get out of bed and he and [the woman with whom he lived] wanted to sleep. The incident ended with the child being physically disciplined three separate times and being locked in her room." In addition, the trial court identified as reasons for prefer-

ring the grandparents the appellant-father's unemployment, the possible lack of permanency in a non-marital relationship, and his "questionable" interest in Kathy Ann because he had placed her in a day care center during the period of joint custody and because previously he had failed to visit his daughter while she was in her mother's custody, i.e., prior to February 22, 1980, when Kathy Ann was adjudicated a dependent child. On the other hand, the court found, the maternal grandparents had demonstrated that they could provide a stable home where Kathy Ann would have spacious quarters and neighborhood children with whom to play. Kathy Ann, moreover, had expressed a preference to remain with her grandparents.

One cannot read the record of the hearing in this matter without obtaining a sense that appellant, although young and inexperienced as a parent, is nevertheless sincere in his desire to have Kathy Ann with him and achieve for her the best. He is a stricter disciplinarian than the child's grandparents. The appellee-grandparents, although deeply caring, are also motivated in part by the fear that their daughter's inadequate history as a parent will result in the severing of close ties between them and their grandchild. They are financially secure, have a spacious home and, in general, have achieved that degree of success and stability which has thus far eluded the younger and less experienced father of Kathy Ann.

This difference, however, is neither greater nor less than that which exists between most young parents and older, more experienced grandparents. Should this lack of experience be the basis for removing custody of a small child from his or her parents and awarding the same to the child's grandparents? Are the greater stability and parenting experience of grandparents "convincing" reasons sufficient to overcome a natural father's prima facie right to custody? We conclude that they are not.

In *Palmer v. Tokarek*, 279 Pa.Super. 458, 421 A.2d 289 (1980), this Court held the fact that a child had expressed a preference to remain with his grandparents and that he had

been well cared for and loved by his grandparents for almost eight years did "not amount to such convincing reasons as would overcome the father's right to have [the child] with him." *Id.*, 279 Pa.Superior Ct. at 469, 421 A.2d at 295. Similarly, in *Ferencak v. Moore, supra,* this Court held the fact that a five-year-old child had been residing with paternal grandparents for nineteen months was not alone a "convincing reason" for denying custody to a natural parent. These cases, as well as others, hold that "the father's right to custody is forfeitable only by misconduct or other factors *which substantially effect the child's welfare.*" *Palmer v. Tokarek, supra,* 279 Pa.Superior Ct. at 472, 421 A.2d at 296 (emphasis in original). See also: *Johnson v. Pinder,* 217 Pa.Super. 180, 182, 269 A.2d 511, 512 (1970); *Commonwealth ex rel. Insalaco v. Delconte,* 201 Pa.Super. 354, 356, 192 A.2d 750, 751 (1963), *aff'd,* 413 Pa. 221, 196 A.2d 353 (1964); *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa.Super. 73, 76, 143 A.2d 665, 667 (1958). Compare: *Albright v. Commonwealth ex rel. Fetters, supra; Ellerbe v. Hooks, supra; Dile v. Dile,* 284 Pa.Super. 459, 426 A.2d 137 (1981).

In the instant case, the cohabitation of appellant and his girlfriend was not shown to have affected in any way the welfare of the child. Consequently, it cannot defeat appellant's superior right to custody. See: *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 140–141, 360 A.2d 587, 590 (1976); *Commonwealth ex rel. Michael R. v. Robert R.R.,* 293 Pa.Super. 18, 23, 437 A.2d 969, 971 (1981); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). Similarly, the fact that appellant was temporarily unemployed and receiving unemployment compensation was not a measure of his ability to be a good father. We are also unable to accept as accurate the trial court's conclusion that appellant's interest in his child was "questionable." If that interest was not apparent while appellant believed the child to be in the custody of and properly cared for by her mother, it manifested itself unequivocally after he learned that the child had been abused during that custody. So also, we find it improper to infer a lack of interest from the fact that Kathy Ann, while in appellant's custody, had attended day school.

This is particularly so where, as here, appellant explained attendance at day school as an attempt to enable Kathy Ann to associate with children her own age.

There remains, then, the Sunday morning incident in which the child was physically punished for wanting to be with appellant, who wished to sleep. Custody of a small child, as appellant concedes, is a demanding and taxing undertaking. He admits that in this instance he did not handle the situation well and that greater parenting experience may have caused him to react differently. The trial court properly concluded that this incident demonstrated "little maturity" on the part of appellant. However, it did not suggest "child abuse," as appellees contended. This was confirmed by Paulette Jones Marshall, a representative of CYS, who, upon learning of the incident from the appellee-grandparents, had conducted an investigation. She testified, when asked by counsel for the child's mother, that CYS continued to recommend, as it had at the earlier hearing, that a natural parent be preferred over the maternal grandparents. We conclude, therefore, that one incident of corporal punishment, even if unadvisedly administered, was not a convincing reason to overcome the natural parent's prima facie right to custody.

The order awarding custody to maternal grandparents is reversed; and custody of Kathy Ann Davenport is awarded to appellant. The case is remanded for the purpose of entering an appropriate order allowing visitation.

McEWEN, J., files a concurring opinion.

POPOVICH, J., files a dissenting statement.

McEWEN, Judge, concurring:

While Homer did not tell of Helen as a small girl, Maurice Chevalier did voice in appreciation that joy was a little girl. It is certain that the baby that inspired the wisdom of Solomon was a boy, for that King would have kept for himself to raise a baby girl. And so it is, that in nothing less than anguish do we consider the determination of who shall have custody of Kathy Ann, now only five years of age.

The opinions of this court repeatedly echo that our most precious resource is the children of our Commonwealth and that there is no more important class of case nor more urgent issue than that of custody. Just as there is no more easy role than to pronounce this principle, so there is no more difficult task than to apply it.

There has not been a more troublesome decision in my experience. The distinguished Montgomery County Common Pleas Court Judge Lawrence A. Brown as trial judge had an opportunity to observe the witnesses and is, therefore, better able to evaluate their credibility as well as gain an impression of their parenting skills. For that reason, as well as the fact that his opinion reflects a careful and intense consideration of the question, I had been inclined to resolve this very close decision by reliance upon the determination of the trial court.

It seems, however, that the further reflection inspired by the very thoughtful majority opinion of my eminent colleague causes me to concur in the result. The case has been remanded by the majority to the Common Pleas Court for the purpose of entering an appropriate order for visitation. It strikes me that it may well be in the best interest of this child if the court were also to monitor the custody and visitation relationships in a fashion that the court deems prudent and for such a time in the future as the court thinks wise.

I concur in the result.

POPOVICH, Judge, dissenting:

After compiling an extensive record, applying the law impeccably to the facts emerging from competent evidence and articulating in a comprehensive opinion its reasons for its adjudication, the trial court awarded custody of the child, according to the child's best interest, to the relatively youthful grandparents.

Finding no substantial reason to reverse the trial court which closely observed the witnesses, I respectfully dissent.