**Valeriano v. Krasowski-Gegenheimer**

*Lawrence J. Valeriano, Jr.,* for plaintiff.
*Alan B. Ziegler,* for defendant.

CAMPBELL, *J.,* January 5, 2010—

## I. BRIEF BACKGROUND

The two parties lived together and had a child together, Paul J. Valeriano III, born on February 28, 2000. Since that time, the parties have had an on-again, off-again relationship with numerous troubles including two protection from abuse orders and a number of custody actions culminating in this action wherein appellee, Paul Valeriano (Father) filed for partial custody time with the child. Since 2006, the child has spent partial custody time with Father via court order. This case has involved a great deal of legal action with a large amount of pleadings, hearings, and appeals, all leading to the multi-day custody trial near the end of 2008.

At that 2008 trial, the sole matter at issue was whether the court should, per appellant's (Mother's) request,

impose a supervised-only restriction on the child's custody time with Father. This court concluded that such a restriction was not in the child's best interests. This court ordered continued child-father counseling, and, as an extra precaution in response to appellant's repeated arguments that Father was psychologically unfit, this court ordered a psychological expert to evaluate Father for custody purposes. After that expert information was presented, this court entered a final custody order; and, appellant appealed that final order as well as earlier rulings.

At the time of filing the notice of appeal, appellant did not immediately serve a notice of appeal and concise statement on this court. But, this court was not inconvenienced by the minor delay. On the other hand, appellant also did not file any transcript requests for three weeks after filing the notice of appeal, which delay did cause a problem in preparing the file for transmittal, and which resulted in the Superior Court querying appellant's counsel as to why the transcripts had not been ordered.

Regarding the letter appellant's counsel sent to the Superior Court of Pennsylvania to explain why counsel took several weeks and prompting from the Superior Court before ordering transcripts within which letter counsel characterized this judge's administrative assistant as unhelpful, this court asserts that counsel's characterization is grossly inaccurate and unfortunately made. Obviously, appellant's counsel was present on every day of testimony and, doubtless, had in his professional file the exact days and hours, especially in his billing, and also could access the official file in prothonotary as easily as this court's staff. This court does not have informa-

tion regarding court reporters going back over a year in chambers, but the court reporters are happy to provide that information. This court's administrative assistant did offer all the information she could access in chambers but suggested counsel cross-check the official file for accuracy and check with the court reporters' office for reporter names. The delay in ordering any transcripts was certainly not this court's staff's fault.

There was some ongoing court reporter confusion regarding one short but important transcript as amid all of the testimony requested there was, it turned out, one lunchtime session when one court reporter filled in for another and this fact was not recorded in any log. But, contrary to the letter characterizing this court's staff as unhelpful, this court's staff strove to be as helpful as possible at all times; and, ultimately, this court's staff solved the mystery of why the lunchtime transcript was not in the log of the court reporter assigned for that day.

Currently, given the time when the transcripts were ordered, and one of the court reporters having pre-set Christmas vacation plans, not all of the transcripts have been produced. This court shall proceed with finishing its memorandum opinion without access to some of the transcripts, so that the record can be transmitted as quickly as possible when all of the transcripts are produced.

## II. FIRST TWO ISSUES COMPLAINED OF UPON APPEAL

In his first two issues complained of on appeal appellant takes exception to an evidentiary ruling of this court

during a September 13, 2006 hearing on a motion for special relief. While this court fervently believes appellant should have his day in Superior Court, there is a question as to whether this issue is now moot. Appellant complains that she was not allowed to present certain historical claims of abuse at the special relief hearing. However, the final custody order which appellant is currently appealing was entered by this court after a later multi-day custody trial and a subsequent psychological evaluation hearing. At trial, appellant presented extensive testimony including the historical abuse allegations which she was not allowed to present at the special relief hearing. This court considered that testimony when crafting its final custody order; thus, this court is uncertain about the relevance of challenging the prior evidentiary ruling.

A. *Error 1: Assuming Appellant's 2006 Evidentiary Issue Is Not Moot, This Court Explains Its Reasoning in Limiting the Evidence Presented at That Hearing*

The Superior Court has repeatedly held that a lower court's decision as to the admission or exclusion of evidence is within the lower court's discretion, and the lower court's evidentiary decision will only be overturned where there is a clear abuse of that discretion. *E.g., Concorde Investments Inc. v. Gallagher,* 345 Pa. Super. 49, 497 A.2d 637 (1985). Pa.R.E. 402 sets forth that "[e]vidence that is not relevant is not admissible." Pa.R.E. 403 sets forth that even relevant evidence may be excluded if its probative value is outweighed by any of a number of factors including "by considerations of undue delay, waste of time . . . ."

In this case, the appellant alleged three factual bases for her requested relief in his motion for special relief. Her first allegation was that "[o]n or about August 1, 2004, respondent bit the child in the butt for discipline purposes."[1] The other allegations were that defendant (appellee) verbally abused the child, and that defendant "pushed Mother into child, knocking child down . . ." and "flicked the child, slapped the child, and push (sic) the child down." These August 2006 allegations were alleged to have occurred before appellant's July 2006 protection from abuse hearing. The appellee's counsel objected at the special relief hearing to any evidence which occurred prior to the protection from abuse two months earlier as appellant had agreed to a custody provision in that agreed-upon order two months earlier; thus, appearing to, at least temporarily, resolve these issues until a custody trial. This court found appellee counsel's objection persuasive.

As established at the special relief hearing, at appellant's protection from abuse hearing on July 31, 2006, wherein appellant sought a P.F.A. order against the appellee, appellant appeared with counsel. Entering the hearing, appellant and the parties' child were on the

---

1. This same allegation had previously been made as part of an earlier petition for emergency relief filed by the appellant in 2005, which, after a hearing, was denied by this court. In this earlier incarnation of this custody case, the parties were the same, the child was the same, the allegation was the same, and this court did not find Mother credible at that time. This court, as part of the one judge/one family policy, has also had these parties before it in prior protection from abuse actions. Mother, when not reconciled with Father, has repeatedly, and unsuccessfully, tried to stop the child from having unsupervised custody time with Father.

temporary protection from abuse order as protected parties. On the date scheduled for the protection from abuse hearing, after extended discussions with the other side, appellant entered into an agreed-upon protection from abuse order with appellee that included a temporary custody provision allowing the child continued periods of partial custody with appellee. By agreement, appellant dropped her request that the child be a protected party in the final protection from abuse order.

This court's highest priority is and was the best interest of the child. Nonetheless, with no recent or new allegations to show danger to the child, this court was not inclined to allow the plaintiff's new counsel to present plaintiff's full custody case under the auspices of a special relief hearing. Some of plaintiff's allegations had already been heard and addressed at previous hearings in the past. All the allegations were part of the recent protection from abuse matter, appellant/Mother entered into an agreed-upon custody order as part of a protection from abuse order on July 31, 2006. On August 8, 2006, appellee/Father filed a custody complaint. Then, appellant/Mother engaged a new attorney and filed her motion for special relief on August 14, 2006. The special relief motion was filed on August 14, 2006; the hearing took place on September 13, 2006.

This court found that allowing testimony based on events that occurred before appellant entered into the agreed-upon custody provision two months previously would have been duplicative and not relevant to whether the child's partial custody time with his father should currently be restricted for emergency safety reasons pending trial. The appellant, Mother, under the same set of facts, had recently agreed to let the child spend unsu-

pervised partial custody time with appellee, Father. Now, appellant was again raising the same allegations though there were no allegations that Father had endangered the child during his periods of custody since the agreed-upon order.

The parties were in the midst of an in-depth custody process including an imminent custody conference before a custody officer where they could each present all their custody testimony and arguments as far back in time as they desired. Additionally, the parties had the right to a full custody trial where this court would allow all custody evidence and arguments to be presented. While appellant had the right to seek special relief under Pa.R.C.P. 1915.13, this court believed this special relief hearing was not the appropriate place for the appellant to present these issues as the basis for special interim relief not only because they went back quite a time period, but this court had heard these specific issues and/or extremely similar variations during previous petition for special relief and protection from abuse hearings. Based upon this context, this court believed the child was in no danger, and, at this special relief hearing, this court was looking for any recent evidence to the contrary.

### B. *Complaint 2: Appellant's Offer of Proof Complaint Regarding the Excluded Evidence*

"Pa.R.E. 103 Rulings on evidence" states that an "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless . . . (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or by

motion in limine or was apparent from the context within which the evidence was offered." Pa.R.E. 103(a).

In this case, the evidence that appellant wished to present was abundantly clear to the trial court and the opposing counsel. The two opposing attorneys had stated on the record what evidence each understood appellant wished to present, a repeat of appellant's allegations in her pleadings. This court believed the evidence was obvious from the context. This court notes that appellant did later testify as to her allegations during the contempt portion of this consolidated hearing. Notes of testimony, September 13, 2006, 35-39. And, as noted earlier, appellant later testified at length regarding all her allegations at the custody trial.

## C. *A Stricken Section of the Transcript*

As a record-keeping matter, this court would like to draw the Superior Court's attention to the fact that at the end of the October 24, 2006 hearing, this court agreed to strike the portion of the September 13, 2006 hearing transcript wherein this court explained the court's normal protection for abuse procedures. This section would be on page 8, lines 4-8 of the September 13, 2006 transcript.

## III. COMPLAINT 3: THIS COURT'S CREDIBILITY FINDING AND THE CUSTODY EVALUATOR

Appellant challenges this fact-finder's credibility characterization of the custody evaluator, Andrea Sledge.

Credibility determinations and the weight to give testimony, including expert testimony, are the sole province of the fact-finder. *Potochnick v. Perry,* 861 A.2d 277, 286 (Pa. Super. 2004), citing *Gaydos v. Gaydos,* 693 A.2d 1368 (Pa. Super. 1997); see also, *Lou Botti Construction v. Harbulak,* 760 A.2d 896, 898 (Pa. Super. 2000) ("In a non-jury trial, the trial judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact-finder. *Malag Inc. v. Climax Molybdenum Co.,* 431 Pa. Super. 569, 572, 637 A.2d 322, 324 (1994). The trial court, as sole assessor of credibility, may believe all, part or none of the evidence presented. *Id.* Absent an abuse of discretion we will not disturb a trial court's findings of fact if they are supported by the record. *Commonwealth v. Blystone,* 421 Pa. Super. 167, 172, 617 A.2d 778, 780 (1992).").

This court respectfully directs the Superior Court to this court's "opinion and order" filed December 10, 2008 in the record, specifically part "IV The expert opinions: the custody evaluator and the parenting counselor" beginning on page 7. In summary, this court had concerns regarding the custody evaluator's neutrality because her tone and body language while testifying displayed an emotional bias against Father. Father presented as an uncouth, rough-around-the-edges, individual, and, both the evaluator's testimony and her report showed how Father personally offended her in her interactions with him. The evaluator's response to that personal offense included a bias in her expert opinion evident during her testimony[2] and, to a degree, in her report as well. That

---

2. Ms. Sledge's quick negative interpretation of Ms. Weller's testimony where Ms. Sledge appeared to dismiss the work Father had put

is not to say that the evaluator did not produce some valuable observations.

This court notes that the custody evaluator had a very difficult job to perform as the parties chose her to conduct a custody evaluation, but really the only issue in this trial was Father's personality and whether the child should have unsupervised custody time with his father. This narrow issue placed the custody evaluator who is trained as a social worker, not a psychologist, in a difficult position. Not only was Father rude to Ms. Sledge during their brief time together, creating personal friction, but Ms. Sledge was continually being asked to offer an assessment about Father's character and personality and how it could affect the child's mental health. Therefore, she was in the difficult position of having to put aside her personal feelings after being insulted and to render psychological opinions near or outside her expert qualifications. Additionally, this court outlined in its December 10, 2008 opinion how Ms. Weller presented as a more neutral expert witness than Ms. Sledge.

Lastly, on the issue of credibility, this court responds to appellant's first accusation of judicial prejudice by stating the obvious which is that this court has had, and continues to have, the child's best interest in mind. This court has no preconceived notions or mindsets regarding ordering supervised visitation where the facts demonstrate that restriction is appropriate in light of the applicable case law.

---

in with Ms. Weller is one example of where she demonstrated bias. Again, it was Ms. Sledge's tone and body language as well as her quick, off-hand verbal negative answers that undercut her credibility. September 10, 2008 transcript 103-107.

## IV. COMPLAINT NUMBER 4: REGARDING THIS COURT'S ORDER FOR PARTIAL CUSTODY AND COUNSELING FOR FATHER AND SON VERSUS APPELLANT'S REQUEST THAT APPELLEE "BE PLACED UNDER SUPERVISED VISITATION WITH HIS SON"

This complaint is the heart of the custody matter. The only issue at the custody trial and subsequent hearings was whether the child should spend unsupervised partial custody time with his father.

Regarding restrictions such as supervised visits or limiting overnight visits, the Superior Court of Pennsylvania stated in *Fatemi v. Fatemi,* 339 Pa. Super. 590, 596-97, 489 A.2d 798, 801-802 (1985):

"We begin by noting that usually an award of partial custody will not contain any restriction. A restriction will be imposed if the parties have agreed to a restriction or if the party requesting a restriction shows that without it, partial custody will have a detrimental impact on the child.

"It is important for courts to impose restrictions sparingly. See *Ferencak v. Moore,* 300 Pa. Super. 28, 445 A.2d 1282 (1982). Courts ought not to impose restrictions which unnecessarily shield children from the true nature of their parents unless it can be shown that some detrimental impact will flow from the specific behavior of the parent. The process of children's maturation requires that they view and evaluate their parents in the bright light of reality. Children who learn their parents' weaknesses and strengths may be able better to shape lifelong relationships with them.

"Once a court concludes that the imposition of a restriction is necessary, it must phrase the restriction in the least intrusive language reasonably needed to safeguard the child. *Somers v. Somers,* 326 Pa. Super. 556, 474 A.2d 630 (1984); *Dile v. Dile,* 294 Pa. Super. 459, 426 A.2d 137 (1981); *Morris v. Morris,* 271 Pa. Super. 19, 412 A.2d 139 (1979). . . . This principle underscores the policy that it is preferable for parent-child relationships to be defined by, and developed according to, the personalities and character of the child and parent, unhampered, to the extent possible, by restrictions imposed by the court."

In our case, appellee (Father) is not a perfect parent; indeed, he's a flawed individual with a crude sense of humor. In 2004, Father bit the child on the bottom as part of poorly conceived parental discipline. Also, several years ago, Father momentarily turned the lights off on his son in the basement as a bad practical joke; and, on another occasion flicked the child with his finger. Father was not, of course, portrayed as all bad at trial even by appellant who testified that Father could be fun and pleasant and liked to work in the garden. (Transcript of appellant's testimony is currently unavailable for a page citation.)

Although these specific incidents were proven to have occurred, over a period of years, it was not shown at the time of the custody trial that Father currently posed any danger to the child's safety or that having partial custody time with Father was a detriment to the child; and, therefore, it was not demonstrated that the restriction of supervised visitation only should be imposed upon the child-father relationship. At the time of trial, Father had

recently completed a dozen parental training sessions with a trained professional and the child.

This court again respectfully refers the Superior Court to this court's December 10, 2008 opinion 13-15. In brief, the parenting counselor found Father to be a flawed individual but with some redeeming attributes, and the counselor's reports were generally positive about the child-father interactions. The point of friction during son and father time with the counselor were when Mother (appellant) was discussed. At the sessions, Father learned more appropriate parenting techniques and communication skills and made some progress on improving the child-father relationship.

The child testified and, contrary to allegations made by Mother, and Ms. Sledge via Mother, the child demonstrated no fear of Father. On the contrary, the child expressed that he generally liked spending time with, and playing with, Father. (Transcript of child's testimony is currently unavailable.)

As Father did not pose a current danger to the child, nor was he causing a clear detriment, this court did not impose appellant's restrictive custody request. As the *Fatemi* court indicated, a child is born with certain parents, and those are the only parents he has; shielding a child from a parent's true character undercuts a child's chance to have a strong relationship with that parent. *Id.* This court ordered that the child's periods of partial custody with Father should continue as should the father-son counseling.

This court intended to enter a final custody order, but since appellant's counsel made numerous mental health

arguments versus Father in counsel's closing, and as the custody evaluator, albeit without psychological credentials, had raised psychological concerns, this court, out of an abundance of caution, ordered that Father be evaluated by a psychologist and that the case reconvene in the future.

After that evaluation was conducted and a final hearing held, this court still lacked grounds to impose the supervised-only restriction for child-father time. This court did add a personal counseling requirement for Father to the order as well as the continued requirement of father-son counseling.

In his issues complained of, appellant specifically states that "overwhelmingly testimony and expert testimony" demonstrated that Father had "significant psychological problems" and, therefore, "should be placed under supervised visitation with his son."

First, the only expert psychological testimony was that of Dr. Hill. Throughout the case, appellant's counsel has relied on Ms. Sledge's "pyschodiagnostic interpretation" but Ms. Sledge has a master's degree in social work, not in psychology, only spent three hours with Father, administered no psychological tests, and is not qualified to offer psychological diagnoses. Appellant made it difficult to gather information to insure the safety of the child by objecting to testimony by Ms. Weller, the parenting counselor, objecting to a psychological evaluation being ordered with a psychologist, and, later, seeking to limit the testimony of the psychologist. Indeed, even while appellant seeks to rely upon Dr. Hill's diagnosis of Father having "some significant psychological issues," appellee continues to complain in his appeal about an evaluation

being ordered, about time being extended to make it happen, about how it was paid for, and to complain that the psychologist's testimony should have been severely limited.

Regarding the psychological expert testimony, Dr. Hill explained that though Father tested within the valid range on the two psychological tests, the MMPI-2, and the MCM-III, Father has a number of major character flaws. Overall, Dr. Hill painted a portrait of Father as a self-centered, not too bright, moody, theatrical, immature man. Dr. Hill recommended more counseling for the child and Father, and individual psychotherapy for Father. This court followed Dr. Hill's recommendations.

Appellant's request that the child only be allowed to spend time with his father under supervised visitation conditions was not supported by Dr. Hill's report and testimony. This court agrees that Father is a flawed individual with character problems. But, he is the child's father. The Pennsylvania case law is clear, when possible, children should be allowed to develop a relationship with their parents and that restrictions should be the least intrusive possible under the circumstances. See *Fatemi;* also, *Pamela J. K. v. Roger D. J.,* 277 Pa. Super. 579, 593, 419 A.2d 1301, 1309 (1980) ("[e]very parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents.").

After listening to all of the evidence and weighing credibility, this court found that a supervised visitation restriction was not necessary in this situation. The child spends a small minority of his regular custody time in his father's custody which includes every other weekend,

and one evening, not overnight, every week. This court ordered the father-son counseling to continue, and ordered psychotherapy for Father per Dr. Hill's recommendations.

If this court had ordered that the child would not spend unsupervised time with Father until all of Father's character issues are fixed, then the child would probably never spend unsupervised time with Father. Father's core personality includes some major character flaws. Although Father has improved some of his parental behaviors through child-parent counseling, it was clear at trial that radically transforming Father's personality was not a short-term project. But, the evidence showed that the child was safe spending partial custody time with Father, and, overall, the child reaped more benefit than detriment in having a substantive relationship with his father so that it was in the child's best interest to be allowed to continue to have unsupervised partial custody time with his father.

## V. REGARDING APPELLANT'S ACCUSATION OF BIAS IN COMPLAINT NUMBER 5

This court is charged with safeguarding the best interests of the child. After the custody trial, this court was satisfied that the child was best served by being in Mother's primary custody and spending partial custody time with Father. Nonetheless, as Father's character was shown to be flawed, and as Mother's attorney had made repeated dire arguments regarding Father's mental health, out of an abundance of caution, this court ordered a psychological evaluation of Father. Per Pa.R.C.P. 1915.8, this court is authorized to order parties to submit to such

expert evaluations. This court was seeking to gather as much information as possible to aid the child. This court is only "biased" in favor of the child; this court took action to ensure the child's best interests were served.

In this fifth complaint, appellant is referring to matters outside the record; and, therefore, this court is forced to respond in kind. In this court's 2008 custody order, Father was to undergo a psychological evaluation by a licensed psychologist. The evaluation was to take place within 45 days of the order, and a report was to be submitted by April 2008. When the deadline came without a report, this court's staff made contact with Father's attorney. Immediately thereafter, not seeking to have any ex-parte communications, this court talked to both attorneys at once on the telephone.

Subsequently, this court ordered that a status conference was to be held with both attorneys present and clients available by telephone. Furthermore, Father's attorney was to gather information from his client before the status. At the status, it became apparent that Father had mismanaged the evaluation because of insurance problems, money problems, and confusion regarding who qualified as a psychologist. Father had attempted to secure an evaluation but had not hired a psychologist. Counsel also shared the news that Mother was allowing Father to spend time at her house including some overnights, and Father's counsel indicated that this change might undermine the urgency of securing an evaluation.

Based upon this court's experience of Father's limited intellectual abilities, this court believed his attorney's

representations that Father had made a good faith effort but had not understood the difference between the various counselors who advertise their evaluation services and a psychologist. No motion for a hearing was ever filed. This court desired a psychological evaluation of Father to ensure that the best interests of the child were being served.

Father paid for the evaluation with a psychologist. But this court requested that the psychologist testify, not just produce a report, so when Father's limited financial resources caused more delay, this court ordered that Berks County Court Administration pay for the expert's testimony fees out of the court administration's miscellaneous budget. First, this decision was made to move the case along and gather information for the best interests of the child. Custody cases are to be concluded as expeditiously as possible, and this court did not want this case lingering in limbo. Second, as appellant was in no manner injured by the court's decision to pay for the expert's testimony, this court does not believe appellant has grounds to complain. Third, the evaluation was ordered partly in response to appellant's psychological worries regarding Father, so appellant was served by the psychologist appearing to answer appellant's questions. Indeed, most of the psychologist's testimony is in response to appellant's counsel's questions.

## VI. APPELLANT'S COMPLAINTS 6 AND 7 REGARDING DR. HILL'S REPORT AND TESTIMONY

This court was satisfied after the extended custody trial that the child should have continued partial custody

time with his father. This court ordered continued son-father counseling to help continue to improve the Father's parenting and the son-father relationship. This court ordered a psychological evaluation out of an abundance of caution in response to appellant's arguments that Father was so psychologically ill that it was not safe for the child to have unsupervised custody time with his father. Appellant had not proven her allegations at trial, but this court proceeded cautiously by ordering an expert evaluation, so that the court would be informed as to Father's psychological health and could judge how it impacted the custody arrangement for the child.

Dr. Hill's report and testimony reinforced this court's opinion that Father has a flawed character, but nothing in Dr. Hill's report or testimony indicated that Father's mental health dictated a change in the custody arrangement. Appellant appears to misunderstand the situation. Although appellant, through her attorney, made arguments that Father's psychological health was sufficient cause to place restrictions on the child's custody time with Father, appellant now argues that a report on Father's psychological health should not be applied to the custody situation. This court sought Dr. Hill's expert opinion on Father's mental health for the sole reason of adding that information to all the custody factors and determining if the custody arrangement should be modified. As to appellant's claim that "Dr. Hill expressed concern about the boy being exposed to his father, the appellee," Dr. Hill had reservations about the Father's character, and concerns about his being a good role model for his son because of his flaws. Transcript, September 22, 2009, 11-12, 24. Dr. Hill's expert psycho-

logical recommendation for a person of Father's personality in this situation was for counseling to help insure a positive father-child relationship. Dr. Hill recommended father-son counseling, individual counseling, and family counseling. Dr. Hill did not recommend that the child not be allowed unsupervised time with his father.

As to appellant's complaint, number 7, that "[t]he lower court erred in permitting Dr. Hill to offer opinions outside the area of a psychological evaluation which Dr. Hill was directed to perform?" this court finds this complaint too vague for a specific response. Dr. Hill provided on-point expert psychological testimony which was relevant to the custody decision.

## VII. APPELLANT'S RECUSAL ARGUMENT

This court is surprised at this complaint. Currently, this court does not recall appellant's counsel making an oral motion for recusal during these custody proceedings. Counsel did not refer to any specific motion for recusal in his concise statement. It is possible counsel did at some time during the extended proceedings make a quick oral motion for recusal, but this court does not recall such a motion at this time. This court certainly does not remember recusal being an issue in this case as there was never any basis for a recusal.

The Pennsylvania Supreme Court has reviewed the recusal landscape:

"If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. *Commonwealth v. Travaglia*, 541 Pa.

108, 661 A.2d 352, 370 (1995). If content with that inner examination, the judge must then decide 'whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.' *Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 534 (2003) (quoting *[Commonwealth v.] Abu-Jamal,* [553 Pa. 485, 720 A.2d 79] at 89). This assessment is a 'personal and unreviewable decision that only the jurist can make.' *Id.* 'Once the decision is made, it is final. . . .' *Travaglia,* at 370 (quoting *Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291, 1300 (1985)).

"[3][4] This court presumes judges of this Commonwealth are 'honorable, fair and competent,' and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. *Commonwealth v. White,* 557 Pa. 408, 734 A.2d 374, 384 (1999). The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the 'decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.' *Commonwealth v. Darush,* [501 Pa. 15, 21, 459 A.2d 727, 731 (1983)]." *Commonwealth v. Druce,* 577 Pa. 581, 588-89, 848 A.2d 104, 108 (2004).

This judge believes she has been fair, balanced, and impartial throughout this case. This court knows of no reason why she should have ever recused herself from this case. This court evaluated appellant's (Mother's) request that the child only have supervised visitation time with appellee (Father) in light of the applicable Pennsyl-

vania custody law on imposing restrictions and in the context of the best interests of the child.

This court has literally no idea what appellant means to indicate with her accusation that this court "had formal fixed opinions which prevented her from ordering supervised visitation." This court has ordered supervised visitation in other custody cases where the facts made supervision in the child's best interest, has ordered supervised visitation in protection from abuse cases, and has ordered supervised visitation in dependency cases. In this case, this court closely evaluated appellant's request in light of all of the established facts, testimony, and expert opinion and made a reasoned decision designed to serve the best interests of the child.

## VIII. APPELLANT'S SECOND BIAS ACCUSATION IN COMPLAINT NUMBER 9

Again, appellant is appealing facts outside the record and, unfortunately, misconstruing them. As a matter of internal court business, this court requested that her custody cases be reassigned when this court took on intensive dependency court duties. However, this court kept custody cases which had outstanding issues, cases where for one reason or another, it did not make sense to transfer them at the time. This court did not "refuse" to reassign any case, but as a general practice kept cases which were not in the right mode for transfer to another judge. This court's transfer of custody cases was done through the auspices of the president judge of the Berks County Court of Common Pleas.

In this particular case, at the time of transferring custody cases, this court had just finished a lengthy custody

trial and was working to secure a psychological evaluation of Father, so that the court could enter a final custody order. It made no sense to transfer this custody case with this outstanding issue dangling, so this court delayed transferring this custody case until a final custody order could be entered. There was no bias involved whatsoever. On the contrary, this court wished to provide the best service possible to all parties, especially the child. This court delayed transferring a small number of other custody and divorce cases for similar reasons.

## IX. APPELLANT'S RESERVATION OF ADDITIONAL ISSUES IN COMPLAINT NUMBER 10

To the best of this court's knowledge, appellant does not have the right pursuant to Pa.R.A.P. 1925 to file additional issues complained of on appeal after the initial deadline. The Children's Fast Track Appeal Rule, Pa.R.A.P. 1925(a)(2) requires the concise statement to be filed and served with the notice of appeal. Allowing the appellant the right to file additional issues a month or more after filing the notice of appeal would appear to breach the rule.

## Conclusion

Appellant (Mother) had concerns about appellee's parenting and wanted their son's time with appellee (Father) to be supervised custody only. At the time of trial, the child had spent years of partial custody time with his father, and, although there was proof that appellee had many severe character flaws, this son-father time

was beneficial for the child. This custody time allowed the child to have a relationship with both of his parents. The child, in general, enjoyed his time with his father. The child and Father had worked with a professional counselor to improve Father's parenting and the child-parent relationship, and this son-father counseling was continuing. Appellant failed to prove under the applicable Pennsylvania case law that imposing the restriction of supervised-only custody time was in the best interest of the child. This court ordered continued son-father counseling to continue to improve further appellee's parenting skills for the child's sake and to give the child ongoing access to a neutral mental health professional.

This court ordered a psychological evaluation of appellee by a qualified expert. Thereafter, this court ordered appellee to participate in individual counseling to address his character shortcomings.

Given all the facts of this particular case, this court believed the partial custody requirements and safeguards put in place were appropriate and in the best interest of the child.