390 A.2d 1326

**COMMONWEALTH ex rel. Pamela STEINER, Appellant,**

**v.**

**Robert N. STEINER.**

Superior Court of Pennsylvania.

Argued April 12, 1978.

Decided July 12, 1978.

458

Alfred H. Lander, Clarion, with him Alex E. Echard, Greensburg, for appellant.

Ralph L. S. Montana, Clarion, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This is a child custody case. In August 1976 the lower court approved an amicable settlement of the parties, awarded custody of their two minor children to the mother, with liberal visitation to the father, and ordered: "If children are removed from the jurisdiction of the Court of Common Pleas of Clarion County, the Defendant [father] shall be notified and given a chance to be heard by the Court

if he so desires." N.T. 1. In April 1977 the mother notified the father that she wished to move with the children to Armstrong County. Following a hearing, the lower court entered an order that it "Hereby refuses the proposed move of the children to Armstrong County. In the event the petitioner [mother] wishes to move without the children, that is her right. However, if the petitioner does decide to move to Armstrong County, it is directed that the custody of the children be removed from the said petitioner Pamela Steiner." The mother has appealed this order.

The parties have lived in East Brady, Clarion County, for the past ten years. They have two children, Matthew Anthony, born in March 1967, and Shelley Marie, born in January 1969. When the parties separated four years ago, the mother and the children remained in the house where the family had been living, while the father moved in with his parents, less than a block away. The house in Armstrong County to which the mother wishes to move is about four miles away. The lower court characterized this move as "an unnecessary move to another environment [that] will necessarily interfere with the welfare of the children." Lower Court Opinion at 3.

 It is settled that in a custody dispute between parents the court's paramount concern is to determine what award will be in the best interest of the children. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 107–8, 296 A.2d 625, 627 (1972); *Cochran Appeal,* 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). In order to make this determination the court must have before it a full record, so that it may consider all relevant evidence. *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Grillo v. Shuster, supra.*

The lower court found that the move would require both children to change schools. This finding is contrary to the record. The mother testified that the children would remain in the same school district, and that while Shelley would

have to change schools for two years, Matthew would remain in the same school. N.T. 9.

The lower court found that the move would "worsen the economic status of the children by the fact that the [mother] would necessarily incur additional economic obligations as a result of the move." Lower Court Opinion at 3. These findings are not supported by the record, which is at best meagre. There is some indication that if the mother moved, she might need to buy a car; she said, however, that if she had to buy a car, she "could probably borrow money from my father." N.T. 18. There was somewhat diffuse and inconclusive testimony about such matters as the mother's present and expected (if she were to move) water, sewage, heating, and rent expenses. The mother's summary was that if she moved, she would not be spending "any more, maybe less." N.T. 8. The mother and father are not divorced. When asked whether if she moved she would expect to seek increased support, the mother replied that she would not. N.T. 11. When asked, "You can financially handle this on what you get for support and any other income?", she answered "Yes." *Id.*

The lower court found that the "move would undoubtedly upset the present relationship [between the father and the children] because of the distance and time involved in visitation by the father and the children." Lower Court Opinion at 3. It is not evident why this should be so, since the move would be of only four miles. In addition, there was evidence regarding the children's relationship with the father's parents; the court did not mention this evidence, although it would seem relevant to any finding regarding the children's relationship to the father. The mother testified that "Bob's [the father's] Dad hasn't spoken to the children since last August . . . . [*i. e.,* for almost a year]." N.T. 20. She also testified that her own relationship with the father's parents is difficult. N.T. 7.

The lower court seemed concerned that the move would be to a house across the street from the house of a "third party" with whom the mother has been associating.

The lower court commented: "While this is no way to be interpreted as being other than 'Platonic', it is an unusual coincidence that the petitioner's prospective residence will be next door to the third party." Lower Court Opinion at 1. Beyond suggesting friendship, there was no evidence as to the nature of the mother's relationship to the third party. Assuming, however, that the mother is involved in a meretricious relationship, that alone would not be sufficient reason to deny her custody. *See Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Burke v. Birch,* 169 Pa.Super. 537, 83 A.2d 426 (1951). The critical question is the effect of such a relationship on the children. There was no evidence at all as to any effect on the children.[1]

Finally, the lower court found that the mother and children were living in a house "equal to or better than the one to which the [mother] proposes to move." Lower Court Opinion at 3. The mother described the size of both houses; they are substantially equal, although the house she wishes to move to has two instead of three bedrooms. N.T. 3, 5. In the mother's opinion, the house she wishes to move to is preferable. She testified that while "[t]he house I am now residing in is in pretty good shape, the roof leaks," and the "outside isn't in good shape." N.T. 7. She also testified that the house she wishes to move to would be better for the children:

> There are woods behind the house. We have been through the woods, which they enjoyed. There is a creek near the house where they like to play in the creek and catch minnows. We always wanted to have

---

1. The lower court did interview the children in chambers. However, the court did not refer to this interview in its opinion, beyond saying that "An examination of the children reveal[s] the boy and girl are of unusual personality. They have obviously not been affected by the marital split. They appear to love both parents equally." Lower Court Opinion at 2. The interview of the children was not transcribed, and counsel were not present. This alone could require reversal. *Gunter v. Gunter, supra; Williams v. Williams,* 223 Pa.Super. 29, 296 A.2d 870 (1972); *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).

a dog but didn't have one in town because I think they should be let loose to roam and I would like to have a dog and they would like this.

Q. In your house in East Brady do you have woods or a creek for them to play in?

A. No.

N.T. 10–11.

It is evident from the foregoing that the lower court had no justifiable basis for denying the mother custody as an unfit parent. The question presented, therefore, is whether the evidence showed that despite the mother's fitness, the father is so much better able to provide for the children that a change of custody is necessary. In this regard the most striking aspect of the record is that the father did not testify, nor did anyone else on his behalf.[2] There was no evidence at all as to the father's character, his living conditions, his ability to care for the children, or even as to his desire to take care of them. Almost equally striking is the failure of either of the father's parents to testify. As mentioned above, the father is living with his parents. So far as the record discloses, he will continue to do so if awarded custody of the children (perhaps he could move back into the house, but then who would care for the children while he is at work?). It is therefore critical to a

2. There did occur, at the very end of the hearing, the following colloquy between the lower court and the father:
BY THE COURT:
I will talk to the children in chambers without the attorneys. In connection with the roof and whatever needs to be done, would you see what is necessary and do it?
BY ROBERT STEINER:
I certainly would. I have seen things wrong with the house and I have wanted to fix it, but she gets upset when I go down and do anything. In fact before this happened, I planned to put siding on and fix the roof.
BY THE COURT:
It is to your advantage to keep the house up.
(Whereupon the Court talked privately to the two children involved in this matter in chambers; no notes of testimony were taken)
RECORD CLOSED.
N.T. 20–21.

determination of the children's best interest that the record disclose the character of the father's parents and of their home.

■ Given such a record, we cannot escape the conclusion that the lower court's decision to award custody of the children to the father, and to deprive the mother of their custody, is insupportable, and represents an undue interference with the mother's freedom of movement. There are circumstances where a court may properly consider the effects of a change of location. *See, e. g., Davidyan v. Davidyan,* 230 Pa.Super. 599, 327 A.2d 145 (1974) (mother desired to take child to Scotland); *Commonwealth ex rel. Parikh v. Parikh, supra* (mother desired to take child to India). However, since the fact that a child may be moved *outside* the Commonwealth is not controlling, *Davidyan v. Davidyan, supra,* a move of four miles *within* the Commonwealth cannot be controlling.[3]

> We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment based on the evidence and testimony, and make such order on the merits of the case as to do right and justice. *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972); *Commonwealth ex rel. Johnson v. Pinder,* 217 Pa.Super. 180, 269 A.2d 511 (1970).

> *Davidyan v. Davidyan, supra,* 230 Pa.Super. at 603, 327 A.2d at 147.

3. The impact of a change of location on the court's jurisdiction has been substantially changed by House Bill 1107 "Commonwealth Child Custody Jurisdiction Act", session of 1977, effective 6/27/78. In regard to circumstances such as those presented here, § 4(a)(2) of the Act provides:

> (a) A court which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> . . . . .
>
> (2) it is in the best interest of the child that the court assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with the jurisdiction of the court, and there is available within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships:

We therefore reverse the order of the lower court and award custody of the children to the mother.

JACOBS, President Judge, dissents.