578 A.2d 17

**Jon C. CLAPPER, Appellee,**

**v.**

**Linda R. CLAPPER, Appellant.**

Superior Court of Pennsylvania.

Argued May 2, 1990.

Decided July 11, 1990.

50

Joseph B. Policicchio, Somerset, for appellant.

Vincent J. Barbera, Somerset, for appellee.

Before CIRILLO, President Judge, and POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from a final order entered in the Court of Common Pleas of Somerset County denying appellant

Linda Clapper's petition to allow her to relocate to Connecticut with the parties' two children. We affirm the trial court's order.

Linda and Jon Clapper were married on April 5, 1975. On November 10, 1980, the couple had a daughter, Jessica Clapper. On December 27, 1983, their son Jon Clapper was born. Since the parties' separation in May, 1987, the Clappers have shared legal and physical custody of the children. Mrs. Clapper has maintained primary physical custody. The record clearly indicates that both parents play active roles in the children's lives. Additionally, the trial court concluded that both parents are fit. *See* Trial Court opinion, at 4, 6, 7. A review of the record also reveals that the children love Jon and Linda equally and seem comfortable with the present custody arrangement.[1] *See* N.T., August 2, 1989, at 31–38.

In June, 1989, Mrs. Clapper informed Mr. Clapper that she intended to move to Connecticut with the children.[2] Mr.

1. Mr. Clapper was awarded physical custody of the children for visitation purposes every Tuesday evening, every other weekend from Friday night through Sunday night, and for six weeks during the summer. Additionally, the custody agreement provides for rotating major holidays between the parties.

2. On January 11, 1989, the parties entered into a "Property and Settlement Agreement." The agreement includes concessions regarding custody and visitation. In pertinent part, the agreement reads:
The parties hereby agree to share legal and physical custody of the children with Wife being primary physical custodian of said children at all times, except the following times, when Husband shall be the physical custodian of said children. . . .
Husband and Wife expressly agree that it is in the best interests of the minor children to continue to maintain a loving and warm relationship with both parents and to that end, both parties pledge themselves to foster continuing access to themselves for their children and to cooperate in every manner with one another so as not to estrange the children from the other or to disrupt the relationship with each now enjoyed by the children.
Husband and Wife agree that if either party moves from Somerset County, notice in writing shall be given to the other party at least ninety (90) days in advance of said move, and in the event that said notice is not given, sole custody of said children is given by the parties hereto to the party hereto who has not moved from Somerset County.

Clapper refused to consent to the proposed relocation. On July 3, 1989, Mrs. Clapper filed a petition for leave to relocate.[3] Mr. Clapper filed his answer to Mrs. Clapper's petition, together with a petition for sole physical custody. Mr. Clapper indicated that if Mrs. Clapper and the children remained in Somerset County, he would not pursue the latter petition. Consequently, a hearing was held on August 2, 1989 to determine whether Mrs. Clapper should be allowed to relocate with the children. After the hearing, the trial court denied Mrs. Clapper's petition as being contrary to the best interests of the children. This appeal followed.

We are now faced with the difficult task of determining whether the trial court erred in denying Mrs. Clapper's petition to relocate and whether the trial court's order forbidding Mrs. Clapper from removing the children to Connecticut was a violation of Mrs. Clapper's constitutional right to travel. Before we discuss Mrs. Clapper's appeal, it is important, and necessary, that we clarify the real issue in this case.

■ This is not an ordinary custody dispute.[4] Both parties, as well as the children, are satisfied with the present custody arrangements. The issue in this case is where the Clapper children should live. Nevertheless, we are governed by one standard: the best interests of the children. *Murphey v. Hatala*, 350 Pa.Super. 433, 438–39, 504 A.2d 917, 920 (1986). We have reiterated this notion time and time again. *See Albright v. Commonwealth ex. rel. Fetters*, 491 Pa. 320, 323, 421 A.2d 157, 158 (1980). In deter-

On April 13, 1989, a divorce decree was signed by the trial court, incorporating by reference the above agreement in its entirety.
*See* Property Settlement Agreement, January 11, 1989, at 11–12; Trial Court opinion, at 2–4, 6–7.

3. Mrs. Clapper also requested that the trial court fashion a new visitation schedule.

4. The hearing that was conducted in the trial court was not a full-blown custody hearing; the parties limited themselves to the issue of whether Mrs. Clapper should be permitted to remove the children to Connecticut.

mining what will serve the best interests of the children, the trial court must consider *all* of the facts and circumstances of a given case. *Commonwealth ex. rel. Oxenreider v. Oxenreider*, 290 Pa.Super. 63, 68, 434 A.2d 130, 133 (1981) ("the hearing court must provide this court not only with a complete record, but also with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision") (citations omitted); *Commonwealth ex. rel. Steiner v. Steiner*, 257 Pa.Super. 457, 390 A.2d 1326 (1978). A parent's decision to move out of state, for instance, would be but *one* factor to consider in assessing the childrens' best interests. *In re Custody of Phillips*, 260 Pa.Super. 402, 394 A.2d 989 (1978); *Commonwealth ex. rel. Steiner v. Steiner*, 257 Pa.Super. 457, 463, 390 A.2d 1326, 1329 (1978). Here, we are to consider where the children's best interests will be served—in Somerset or in Connecticut.

 This Court has not specifically addressed the issue of whether a denial of a parent's petition to relocate with the children represents an unconstitutional travel restriction.[5] However, we have noted that "Pennsylvania courts no longer adhere to a preference favoring a resident custodial parent." *Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 44, 446 A.2d 1323, 1326 (1982) (citations omitted). Moreover, "[t]o *condition* an award of *custody* upon [a party's] *agreeing to remain* within Pennsylvania would be 'an undue interference with the [party's] freedom of movement.' " *Id.*, 301 Pa.Superior Ct. at 44, 446 A.2d at 1327 (citations omitted) (emphasis added). *See also Lozinak v. Lozinak*, 390 Pa.Super. 597, 569 A.2d 353 (1990) (dissent, Popovich,

---

**5.** Conversely, the Pennsylvania Supreme Court has mandated that when cases contain both constitutional and non-constitutional issues, we should not reach the constitutional issues if the case may properly be decided on non-constitutional grounds. *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981); *Mt. Lebanon v. County Bd. of Elections*, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977). Moreover, the right to travel is not absolute. *See In re Mack*, 386 Pa. 251, 256, 126 A.2d 679, 681 (1956) ("it is accepted constitutional doctrine that [certain] fundamental human rights are not absolute"); *Fischer v. Commonwealth Dep't of Public Welfare*, 85 Pa.Commw. 240, 256–58, 482 A.2d 1148, 1157 (1984) (accord).

J.). In each (custody) case, we stressed that the strength and stability of the relationship between the parents and the children was of the utmost importance. *See also Fisher v. Fisher*, 370 Pa.Super. 87, 535 A.2d 1163 (1988) ("Courts have long recognized the importance of a continuing and stable custodial relationship with a parent which satisfactorily serves the child's needs.") The potentially adverse effect of interstate movement was not the focus of our decisions. We do not dispute that a child of tender years will adjust to new environments. The question is whether that move will be in the child's best interest. *See Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 44–45, 446 A.2d 1323, 1326–27 (1982); *see also Commonwealth ex. rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981) (parent's intention to relocate with the child was not the controlling factor in a custody dispute); *Commonwealth ex. rel. Steiner v. Steiner*, 257 Pa.Super. 457, 463, 390 A.2d 1326, 1329 (1978) (there are "circumstances where a court may properly consider the effects of a change of location," however, *to deprive a mother of custody* because of a proposed move represents an undue interference with her freedom to travel). Finally, in *Davidyan v. Davidyan*, 230 Pa.Super. 599, 327 A.2d 145 (1974) we held:

> Appellee's intention of taking the boy to Scotland does not necessitate a reversal of the decision below. The fact that the child will be removed to a place outside the Commonwealth is not controlling. 'The paramount consideration is at all times *the best interests and welfare of the child,* which includes its physical, intellectual, moral and spiritual well-being, *and all other considerations are subordinate.'*

*Id.*, 230 Pa.Superior Ct. at 604–05, 327 A.2d at 148 (citations omitted) (emphasis added).[6]

**6.** The *Davidyan* Court also noted that

> The purpose of the general proposition that the court will hesitate to place a child outside its jurisdiction is to insure that a normal relationship with both parents will be maintained.... Custody orders seldom are satisfactory to both parties.

■ The instant case is difficult. Both parents are fit; both parents want what is best for their children. Additionally, both parents have been very cooperative with one another in an effort to facilitate warm relationships with the children at minimal emotional costs. However, the record in this case reveals that Mrs. Clapper wants to move to Connecticut to better *her* education, occupational skills and opportunities and quality of life.[7] The record, read in its entirety, supports the trial court's finding that Mrs. Clapper's goals are related to self-improvement. *See* N.T., August 2, 1989, testimony of Linda Clapper, at 72–140. *See also* Trial Court opinion, at 5, 8–9. While we can not fault Mrs. Clapper for wanting to better her life, she may be accomplishing her goals at the expense of the children.[8] The effect of the move would be to uproot Jessica and Jon from familiar and congenial surroundings and to remove them from their father, who up to this time has maintained a steady and frequent relationship with his children.[9]

*Id.* at 605, 327 A.2d at 148–49. The instant case presents a situation where the custody schedule *is* working. Both children are maintaining good relationships with both parents on a consistent basis.

7. We believe that the record supports the trial court's assertion that Defendant has not produced very convincing evidence of any special need to move the children to Danbury, Connecticut. She has no family in or near Connecticut and knows only one person in New York within a reasonable distance. Her family is in Pittsburgh. The employment that she has [considered] in Connecticut is as a Registered Nurse and she is qualified to do that in Western Pennsylvania the same as she would in Connecticut. While it appears that her salary might be more in Connecticut, the evidence indicates that living expenses would more than eat up the increase in salary.... We are convinced that even though Defendant would be very liberal with visitation rights for the children with their father, the move would seriously, adversely affect the relationship the children now have without, on the other hand, increasing substantially the quality of life for the Defendant.
Trial Court opinion, at 8–9.

8. We do not doubt that Mrs. Clapper's ultimate intentions are to benefit her children; however, there are no guarantees that the children will not endure undue hardship in the process. More importantly, if the children are moved to Connecticut, their relationship with their father will be affected by a distance of approximately 400 miles.

9. *See* N.T., August 2, 1989, testimony of Jon Clapper, at 142–178.

In *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988), this Court aptly stated our standard and scope of review:

In an appeal of a child custody determination made by a trial court, the paramount concern must be the best interest of the child. In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, we will not interfere with its order awarding custody.

*Id.*, 380 Pa.Superior Ct. at 21, 550 A.2d at 1343 (citations omitted); *see also Commonwealth ex. rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984). In the instant case, we defer to the trial court's findings of fact, ably set forth in its opinion.[10] The record adequately reflects the trial court's conclusion that the children's best interests would be served by remaining in Somerset. In that way, the status quo would be maintained and the children could continue to spend quality time with their father on a consistent basis.[11]

**10.** Specifically, we accept the trial court's pronouncement that
[t]he children appear happy and satisfied in their present surroundings. They see their father frequently with very little travel necessary, they can and do see their grandparents frequently as well as the extended family and have many friends here. They want to stay here and spend more time with their father.
Trial Court opinion, at 8.

**11.** We stress that here, the trial court is not *conditioning custody* on Mrs. Clapper's move. It decided that the children's *best interest* will be served in Somerset, with their mother but close to their father, as opposed to in Connecticut, again with their mother, but distanced from their father. The trial court was satisfied that the children should remain with their primary caretaker. However, after analyzing the situation as a whole, the trial court concluded that the children

Although it is unfortunate that by the trial court's decision, Mrs. Clapper felt penalized for her efforts to better her life and that of her children, the issue preserved for our review is whether the trial court erred in determining the best interest of the children. We cannot conclude that it erred. As the primary caretaker, it is Mrs. Clapper's duty to provide for her children's best welfare even though as a result she is forced to make a personal sacrifice. We do not reach the merits of Mrs. Clapper's claim that her constitutional right to interstate movement was violated in this case. Rather, the trial court correctly concentrated on providing the best life for *Jessica* and *Jon* and decided, based on *all* of the evidence and the pertinent law, that *the children's best interests* would be served if they remained in Somerset. *Commonwealth ex. rel. E.H.T. v. R.E.T.*, 285 Pa.Super. 444, 427 A.2d 1370 (1981) (trial judge is in the best position to evaluate attitudes, sincerity, credibility, and demeanor of witnesses; therefore, his/her determinations should be accorded great weight).

Order affirmed.

had substantial ties to Somerset and to their father, and that a close, *constant* relationship with *both* parents would best serve the children's welfare. The trial court's decision did not focus on *Mrs. Clapper's* interests in Connecticut, because that evaluation in and of itself both discounts and masks the true issue in this case: what is the best interest of the *children?*