J-S26002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADRIAN WHITE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTINE MALECKI | : | No. 478 MDA 2024 |

Appeal from the Order Entered March 19, 2024
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  202201851

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.E.:　　　　**FILED: SEPTEMBER 26, 2024**

Adrian White ("Father") appeals from the order of the Luzerne County Court of Common Pleas granting the petition of Christine Malecki ("Mother") for primary physical custody of their 7-year-old son ("Child") and his relocation pursuant to the Child Custody Act. *See* 23 Pa.C.S.A. §§ 5328(a), 5337(h). Mother requested that Child move from Father's home in Germany to Mother's home in Pennsylvania. After our thorough review, we affirm on the basis of the trial court's opinions.

The parties are familiar with the litigious procedural history of this matter. The trial court provides a thorough procedural and factual background in its April 24, 2024 opinion. *See* Trial Court Opinion, 4/24/24, at 1-6. Therefore, we see no reason to restate it here.

As a general matter, we note that Mother and Father married in August 2016, and Child was born in September 2016. In mid-2018, the family moved

to Germany, where Father began employment as a logistics management specialist with the Department of Defense. He was stationed with the Army Reserves. Due to a grave illness suffered by Mother a week after arriving in Germany, Mother obtained treatment in the United States in 2018, briefly returned to Germany, and then permanently moved back to Pennsylvania with Child and his maternal half-sibling in 2019. On October 26, 2022, the court granted Father's petition for primary custody of Child and to have Child relocated to Germany. The court granted Mother partial physical custody. After several petitions for contempt filed between the parties, Mother moved for primary physical custody of Child and requested he be relocated back to Pennsylvania. Father filed a Motion to Relist his Petition for Contempt that had been denied. The court ordered it would hear argument on Father's Motion before the March 4, 2024 hearing on Mother's Petition for Modification. On March 18, 2024, the court granted Mother's petition to modify custody. Father timely appealed.[1]

Father raises 15 allegations of error on appeal in which he challenges the trial court's application of the custody factors at 23 Pa.C.S.A. § 5328(a)(1), (a)(4), (a)(8), (a)(13), and (a)(15), and its consideration of the relocation factors at 23 Pa.C.S.A. § 5337(h)(1), (h)(2), (h)(3), (h)(6), and

---

[1] The court's order did not dispose of Father's Motion to Relist his Petition for Contempt. However, we find the March 18, 2024 decision is a final custody order notwithstanding Father's collateral contempt issue.

(h)(7). Father also argues that the court erred in failing to rule on his Motion to Relist Petition for Contempt.

Our standard and scope of review of this custody matter are well-settled:

> The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.
>
> On issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> The test is whether the evidence of record supports the trial court's conclusions.

*C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019) (citations and brackets omitted). "Simply stated, the test is whether the evidence of record supports the trial court's conclusions and the conclusions are grounded in a comprehensive evaluation of the best interest of the child." *H.C.Z. v. J.K.Z.*,

236 A.3d 1106, 2020 WL 1900100, unpublished memorandum, at *2 (Pa. Super. filed April 17, 2020) (citation and brackets omitted).[2]

The trial court is required to consider all 16 factors in Section 5328(a) when entering an order that affects custody. **See A.M.S. v. M.R.C.**, 70 A.3d 830, 836 (Pa. Super. 2013); 23 Pa.C.S.A. § 5328(a). "In a custody case where neither parent is relocating, but the child[] stand[s] to move a significant distance, trial courts should [] consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis." **D.K. v. S.P.K.**, 102 A.3d 467, 476 (Pa. Super. 2014); **see** 23 Pa.C.S.A. § 5337(h).

After reviewing the record, the parties' briefs, and the Honorable Tarah Toohil's well-reasoned Pa.R.A.P. 1925(a) Opinion, which incorporates her astute March 18, 2024 Opinion, we conclude Father's issues merit no relief. The trial court's decisions belie Father's characterization of the record and Father's claim that the trial court abused its discretion or failed to properly consider the custody factors and evidence before it. The March 18, 2024 Opinion analyzed both the custody and relocation factors. **See** Trial Court Opinion, 3/18/24, at 7-13. The April 24, 2024 Opinion includes a discussion of the court's findings and effectively addresses Father's appellate issues. **See** Trial Court Opinion, 4/24/24, at 11-15.

---

[2] Unpublished decisions filed after May 1, 2019 may be cited for their persuasive value. **See** Pa.R.A.P. 126(b).

We affirm on the basis of the trial court's comprehensive opinions of March 18, 2024 and April 24, 2024. On remand, we direct the trial court to address Father's Motion to Relist the Petition for Contempt.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/26/2024

| | | |
|---|---|---|
| ADRIAN WHITE, | : | IN THE COURT OF COMMON PLEAS |
| Plaintiff | : | OF LUZERNE COUNTY |
| v. | : | CIVIL ACTION – LAW |
| CHRISTINE MALECKI, | : | IN CUSTODY |
| Defendant | : | No. 1851 OF 2022 |

## OPINION

The Court opines that the paramount concern in cases involving custody of the child is the child's best interest, based on consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. Bovard v. Baker, 775 A.2d 745 (Pa. 2001), C.W. v. K.A.W., 774 A.2d 745 (Pa. Super. 2001), Swope v. Swope, 455 Pa. Super. 587, 689 A.2d 264 (Pa. Super. 1997), McMillen v. McMillen 529 Pa. 198, 602 A.2d 845 (1992), Sawko v. Sawko, 425 Pa. Super. 450, 625 A.2d 692 (1993). In Clapper v. Clapper, 396 Pa. Super. 49, 578 A.2d 17 (1990), the court held that in determining what will serve the best interest of the child, the trial court must consider all of the facts and circumstances of a given case.

### BEST INTERESTS OF THE CHILD 16 FACTORS:

The Court enters its Order in consideration of the applicable and relevant factors of Title 23 Pa.C.S. §5328, listed below as follows:

1. Which Party is more likely to encourage and permit frequent and continuing contact between the child and another party.

This factor is determinative as the child deserves to have equal time with his parents and yet when the child is in Father's custody the child has less of a chance to access Mother. Father, although he is a logistics employee for the military, is unable to get the child to Mother and even has created difficulty for her including, refusing to send the child accompanied by airplane staff and/or a trained supervisor where transportation had been provided or booked by Mother.

There are major examples under the current scheduled where Father has restricted Mother's custodial rights. December 2022: Father refused to allow Mother a charity funded trip. Recently, he refused her the December 20023 trip she booked. Father then rebooked a different flight of his choice eliminating some of Mother's days with the child.

The Court has no other choice than to remedy the alienation of the child from his Mother by reversing the custody schedule. For the child to continue in Father's primary care equals Mother having nearly no custody at all.

This factor weighs against Father.

2. That the present and past abuse committed by either party or member of the party's household, whether there is a continued risk of harm to the child, or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

This factor is not applicable.

3. The parental duties performed by each party on behalf of the child.

This factor weighs in favor of both parents.

4. The need for stability and continuity in the child's education, family life and community life.

Education: The child is currently one grade ahead in Germany and seems to be very young. Mother had expressed concerns that the child was being pushed ahead by Father unnecessarily. Upon moving the child to the United States for fall enrollment it is recommended that the child be reassessed.

Education: 2nd grade in his English school is a concern. However, evidence showed a young age 7 in 2nd grade and not 8 until September. The Court agrees with Mother that Father "pushed the child ahead."

Family Life: Both parents have a positive, loving, and caring family. Father did exhibit cultural and educational family trips to castles in Europe and other family activities.

8

Community Life: Father did involve the child in soccer and was able to coach the child. Father is also scheduled to coach the child currently in basketball. This is laudable.

This factor weighs for both parties neutrally.

5. The availability of extended family.

This weighs equally for Mother and Father who have a caring family dynamic on both sides.

This factor weighs for both parties neutrally.

6. The child's sibling relationships.

The minor child has an older half-sister, residing with Father. The minor child has an older half-brother, residing with mother. Although this factor is not controlling, it is an important factor in custody cases. See Johns v. Cioci, 865 A.2d 931, 942 (Pa. Super. 2004) where the Court stated: "Absent compelling reasons to separate siblings, they should be reared in the same household to permit the 'continuity and stability necessary for a young child's development.' Pilon v. Pilon, 342 Pa. Super. 52, 492 A.2d 59, 60 (1985) .... However, this Court has made clear that the policy against separation of siblings is only one factor-and not the controlling factor-in the ultimate custody decision. (Citing cases)."

This factor weighs in favor of both parents neutrally who have a half-sibling of the minor child living in both homes.

At this time, the Court weighs this in favor of A.W. having the opportunity to have time with his older brother.

Testimony showed that A.W. only had approximately 60 days total with his brother out of 365 days and only approximately only 74 out of 365 with Mother.

7. The well-reasoned preference of the child, based on the child's maturity and judgment.

The child was interviewed by this Court and the child was considered to be very young and did not present a well-reasoned preference.

This factor is not applicable.

8. The attempts of a parent to turn the child against the other parent.

There was no evidence that the parents tried to alienate the affections of the minor child against either party. This factor is not applicable.

9. Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs.

Both parties maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs. However, the child, when with Father, gets less time than he should with Mother which impacts him emotionally as the Court has determined from the judicial interview.

This factor weighs in favor of Mother.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Mother reports her availability has improved as evidenced by her time with the child over the summer. She spent two (2) special weeks with him alone at the Fisher House. The December holiday was also a time where Mother was able to spend quality moments with the child.

This factor weighs neutrally.

11. The proximity of the residences of the parties.

Father is in Germany for work and Mother is in the United States. The distance is great and travel between the residences is inconvenient, lengthy, and expensive. The parties also live in separate time zones where Germany is 6 hours ahead.

This factor weighs against Father as the distance has created a logistical nightmare of which only he can navigate and he ultimately controls since he has had primary custody of the child.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Each party has proved to be able to care for the child and make appropriate child-care arrangements. This factor is positive for both parents.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from

abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

This family has a high level of conflict and the parties are increasingly non-communicative with one another. Father has been stolid in his refusals to get the child to Mother without delays and conflict.

This factor weighs against Father.

14. The history of drug or alcohol abuse of a party or member of a party's household.

This is not a relevant factor.

15. The mental and physical condition of a party or member of a party's household.

Mother has a more improved situation than she had previously. While Mother needs one more surgery in the upcoming months, this factor should not be held against her as she is prepared to be a full-time, hands-on Mother and has assistance if necessary.

This factor is neutral.

16. Any other relevant factor.

Consideration of the required relocation factors under 42 Pa.C.S.A. 5337 (h).

Where neither parent is seeking to relocate and only the child would be moving to a significantly distant location if custody shifted from one parent to another, it does not trigger section 5337 of the Child Custody Act. Trial courts should still consider the relevant factors of section 5337 (h) in their section 5328 (a) best interest analysis. Several of the relevant factors of 5337 (h) are encompassed, directly or implicitly, by the custody factors listed in section 5328 (a). Any relevant section 5337 (h) factor that is not expressly encompassed in section 5328 (a) should be considered by the trial court under the catchall provision of section 5328 (a)(16). **D.K. v. S.P.K.** 102 A.3d 467, 477-478 (Pa.Super. 2014).

The factors in 5328 which are the same or similar to relocation factors as per **D.K. v. S.P.K.** 102 A.3d at page 477:

5337(h)(4) child preference nearly identical to 5328 (a)(7) child preference;

This is addressed above.

5337(h)(9) abuse closely related to 5328(a)(2);

This is addressed above.

5337(h)(5) attempts of parent to turn child against other 5328(a)(8);

This is addressed above.

5337(h)(1) which requires the court to consider nature, quality, extent of involvement and duration of the child's relationship with the party proposing relocation and with the nonrelocating party, siblings and other significant persons in the child's life encompasses (3), (5), and (6) of section 5328(a) which require the consideration of the parental duties performed by each party, 5328 (a)(3) the availability of extended family, 5328(5) sibling relationships, 5328(a)(6). Compare 23 Pa.C.S.A. 5337(h)(1) with Pa.C.S.A. 5328(a)(3), (5), (6).

This is addressed above.

Further **D.K. v. S.P.K.**, at page 477 states:

"Additionally, in any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development **(23 Pa.C.S.A. § 5337(h)(2))**, the feasibility of preserving the relationship between the other parent and the child **(23 Pa.C.S.A. §5337(h)(3))**, and whether the change in the child's residence will enhance the general quality of life for the child. **(23 Pa.C.S.A. § 5337(h)(7))**. Even those **these three factors** are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section 5328(16), which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16)." Emphasis added.

5337(h)(2) The Court has considered the child's age, his development and needs and how the change of residence from Father to Mother will impact him; and is of the opinion that he will not be adversely affected. The child has been deprived of his Mother's nurturing care significantly. The child's educational needs will be provided for, as well as his physical and emotional development, by Mother.

This factor weighs for Mother.

5337(h)(3) Although it is difficult for the parties to exercise their custodial rights since they live so far apart, it is possible for them to cooperate which will allow the parties to preserve their relationship with the child.

Since this Court issued its Order on October 26, 2022, allowing the child to relocate with Father to Germany, the relationship between the child and Mother has not been preserved as it should have been. Father is in a better position physically and financially where he is not obstructed from coming to see the child in America. He has family resources in America and wishes to be able to accompany the child on flights from

Germany as well have paternal grandmother accompany the child on flights. Mother, on the other hand, due to her medical and financial condition is more limited than Father.

This factor weighs for Mother.

5337(h)(7) The change in residence for the child will enhance the general quality of life for the child since he will be put in a position to gain a significant increase in his time spent with his Mother and will be able to access the Maternal grandparents and his maternal half-brother, of which he has been deprived since this Court's Order of October 26, 2022.

This factor weighs in favor of Mother.

## CONCLUSION

The Court has considered all the factors required by the statute and is of the opinion that the best interest of the minor child is best served by granting Mother's request for primary custody and allowing the child to be relocated to her residence.

BY THE COURT,

_____

Judge Tarah Toohil

13

ADRIAN WHITE,            :    IN THE COURT OF COMMON PLEAS

        Plaintiff        :    OF LUZERNE COUNTY

v.                      :    CIVIL ACTION – LAW

CHRISTINE MALECKI,       :    IN CUSTODY

        Defendant        :    No. 1851 OF 2022
                :    No. 478 MDA 2024

## OPINION PURSUANT TO PA.R.A.P. 1925(2)(II)

## PROCEDURAL BACKGROUND

Plaintiff, Adrian White, Appellant ("Father") has filed an appeal from this Court's Order entered on March 19, 2024, where the Court granted Defendant, Christine Malecki's ("Mother") Petition to Relocate the child, A.C.W. ("minor child") to the United States from Kaiserlauten, Germany and awarded her primary custody.

The parties have been before the trial court previously, on Father's petition for primary custody and notice of proposed relocation to Germany. By order filed October 26, 2022, this court granted Father's request for relocation and awarded him primary custody, after a custody hearing held on August 31, 2022 and September 19, 2022. The Pennsylvania Superior Court affirmed the order as it related to the relocation and primary custody in an opinion and order at **White v. Malecki,** No. 1548 MDA 2022, 296 A.3d 1210 (Pa. Super. 2023).

The October 26, 2022 Order provided the custody schedule for the parties as follows:

    3)    "Father shall have primary physical custody of the minor child.

4) Custodial Schedule:

    4a) Starting in the year 2023: Mother shall have a period of custody with the minor child on winter break every year. In the alternative, Mother shall also exercise custody on Thanksgiving break if unable to exert custody during winter break.

    4b) Starting in the year 2023: Mother shall have a period of physical custody of the minor child for spring break, or the spring holiday, or Mother's Day every year.

    4c) Starting in the year 2023: Mother shall have a period of custody of the minor child for a two (2) month vacation time during the summer."

With regard to transportation costs the October 26, 2022 Order stated:

6) "Transportation Costs: The immediate costs of transportation for A.C.W to travel to Germany shall be paid by Father. Father shall be solely responsible for costs of transportation of the child back to Father's residence at winter break. In the alternative, Father shall be solely responsible for costs of transportation of the child back to Father's residence at Thanksgiving break."

The Superior Court vacated that part of this Court's Order regarding transportation costs and stated:

"Based on this record, the trial court opined that the transportation costs imposed onto Mother were not prohibitive. As we are not bound by the court's inferences and deductions, we disagree. The international transportation costs unique to this case are extraordinary in comparison to the costs associated with interstate

2

custody exchanges, to say nothing of typical custody exchanges. Add the fact that parties have dramatically different earning capacities. Add that the plain terms of the order require Mother to pay for nearly all the Child's travel. The result is a provision that is manifestly 'unreasonable as shown by the evidence of record'.

The trial court carefully crafted Paragraph 4 to achieve a custody schedule that would be in the Child's best interests; as written, the Child would not go without seeing Mother for more than three or four months at a time. However, the trial court cannot achieve the intended result of its order, if Mother cannot afford the transportation costs set forth in paragraph 6. **Even one forgone opportunity for partial custody undermines the overall custody arrangement.** Thus, paragraph 6 constitutes an abuse of discretion, because it inhibits Mother's full compliance with paragraph 4. The order is at odds with itself. (Emphasis added)."

**White v. Malecki,** 296 A.3d at page 1218.

On May 2, 2023 Mother filed a Petition for Special Relief and Contempt alleging that she did not receive any period of custody for Thanksgiving or over the Christmas break. The Petition alleged that Mother made arrangements to have the child brought to the United States on an escorted flight free of charge over the Christmas holiday but Father would not cooperate with the charity to provide information for the flight. The Petition further alleged that Father would not deliver the child for the summer period of Mother's custody.

The Court held a hearing on Mother's Petition on May 24, 2023, at which time, the parties appeared via zoom with counsel. The parties agreed when summer vacation

3

would begin, and end and they would share the cost of the child's ticket from Germany equally. Father was instructed by the court to make the arrangement work for Mother to have custody. (5/24/23 Transcript, page 17).

On June 6, 2023 Mother filed a Petition for Contempt and for Emergency Special Relief alleging that Father notified her that he obtained a flight from Germany to Georgia and Georgia to Pittsburgh and Mother would have to get the child from Pittsburgh and Mother would have to travel over four (4) hours to retrieve the child.

The Court held a hearing on June 9, 2023 at which time both parties appeared by telephone and counsel appeared in person. It was established that Father had flights scheduled from Germany to Amsterdam to Atlanta and from Atlanta to Cleveland and then to McDonald, Pennsylvania which is in the western part of Pennsylvania. (6/9/23 Transcript, pages 8, 10-11). On June 9, 2023, the Court ordered Father to immediately facilitate the child's arrival on or before June 15, 2023 to either of the following three (3) airports:

a) John F. Kennedy International Airport, Queens, New York.

b) Newark Liberty International Airport, Newark, New Jersey.

c) Philadelphia International Airport, Philadelphia, Pennsylvania.

The flight Father proposed would have his mother and the child's older sister present during the flight from Germany.

. On July 19, 2023, Father filed a Petition for Contempt alleging that Mother violated the agreement reached at the May 24, 2023 hearing by failing to reimburse him for 50% of the minor child's travel costs for the 2023 summer vacation. After a hearing

4

held on September 5, 2023 the Court denied Father's Petition, without prejudice, because he failed to provide sufficient proof of the costs related to the trip. At the same time, the Order provided Mother's Petitions for Emergency Special Relief and for Contempt were dismissed as resolved.

On July 11, 2023, Mother filed a Petition for Modification seeking primary physical custody of the minor child and alleged, inter alia, that although the October 26, 2022 Order provided Mother a period of physical custody of the child at Thanksgiving or Christmas, a period of physical custody at spring break, spring holiday or Mother's Day and a period of physical custody for a 2-month period during the summer break, Mother did not get any period of physical custody of the child at Thanksgiving or Christmas Holiday, or during spring break, spring holiday or Mother's Day.

By Order entered September 5, 2023, after a conciliation conference, pending the scheduling of a custody trial, the parties were ordered to follow all orders of the court. On December 4, 2023 the Court scheduled a custody trial for March 4, 2024.

On September 19, 2023, after a hearing conducted on September 5, 2023 regarding the Remand order of the Superior Court dated June 9, 2023, the Court ordered that Father shall bear seventy-five (75%) of the costs of transportation to effectuate Mother's periods of custody.

On October 19, 2023 Father filed a Motion to Relist the Petition for Contempt which had been denied in the Order filed September 19, 2023. Father's Petition was scheduled to be heard on March 4, 2024 at the same time as the custody trial was to begin on Mother's Petition for Modification.

5

On December 8, 2023, Mother filed a Petition for Contempt and Emergency Special Relief alleging that since October 2023 Mother was seeking to have the minor child for the Christmas 2023 holiday break, but Father responded that he would not send the child unless Mother paid him, in advance, 50% of the child's which was 531 Euros plus 200 Euros for the travel companion.

On December 12, 2023 the Court granted Mother's Petition for Special Relief and ordered Mother to purchase the round-trip ticket for the December 15, 2023 to January 1, 2024 holiday trip for the child and Father was to reimburse Mother 75% of the transportation costs.

During the custody trial held on March 4, 2024, the Court received evidence from both parties regarding Father's claim for reimbursement for the summer 2023 trip and Mother's claim for reimbursement for the December 2023 trip. Father presented evidence of charges totaling $1,000.97 (Exhibits R-1, 2, and 3). Mother presented charges of $817.98 (Exhibit P-1). Assuming Father would be entitled to 50% of the charge, he would be reimbursed in the amount of $500.48. Mother would be reimbursed 75% of $817.98 or $612.75. The Court did not rule this issue in its March 19, 2024 Order, which is the subject of this appeal.

## APPELLANT'S CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his statement, Father sets forth his reasons why the trial court was in error in the Order of March 19, 2024, as follows:

6

1. Did the trial court err and abuse its discretion by not properly applying the factors under 23 Pa. C. S. § 5328 in awarding Appellee, Christine Malecki ("Mother"), primary physical custody of the child?

2. Did the trial court err and abuse its discretion by not properly applying the factors under 23 Pa. C. S. § 5337(h) in detail in awarding Mother primary physical custody of the child?

3. Did the trial court err and abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(1): "Which party is more likely to encourage and permit frequent and continuing contact between the child and another party"?

4. Did the trial court err and abuse its discretion in finding under 23 Pa.C.S. § 5328(1) that it, "[had] no other choice than to remedy the alienation of the child from his Mother by reversing the custody schedule" despite the trial court also finding under 23 Pa.C.S. A. § 5328(8) that "[t]here was no evidence that the parents tried to alienate the affections of the minor child against either party"?

5. Did the trial court err and abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(4): "The need for stability and continuity in the child's education, family life and community life?"

6. Did the trial court err and abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(8): "The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm?"

7

7. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5328(a)(13): "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another?"

8. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5328(a)(15): "The mental and physical condition of a party or member of a party's household?"

9. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5337(h)(1): "The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life?"

10. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5337(h)(2): "The age, developmental stage, need of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child?"

11. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5337(h)(3): "The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties?"

12. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5337(h)(6): "Whether the relocation will enhance the

8

general quality of life for the party seeking relocation, including, but not limited to, financial or emotional benefit or educational opportunity?"

13. Did the trial court err and abuse its discretion by not properly applying the factor in 23 Pa.C.S. § 5337(h)(7): "Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity?"

14. Did the trial court err and abuse its discretion in failing to rule on Father's Motion to Relist Petition for Contempt, which was part of the proceedings that took place on March 4, 2024?

## DISCUSSION

The Superior Court has referred to well established rules when reviewing the custody determination by the trial court.

In **Truax v. Zych**, 344 MDA 2023, at *4 (Pa. Super. October 26, 2023)[1], the Court stated:

> [on] issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

[1] Non-precedential decisions filed after May 1, 2019 may be cited for their persuasive value. Superior Court O.P. 65.37.

9

The primary concern in custody cases is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. **Saintz v. Rinker,** 902 A.2d 509, 512 (Pa. Super. 2006). 23 Pa.C.S.A. § 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. **See E.D. v. M.P.,** 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011).

The Superior Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." **M.J.M. v. M.L.G.,** 63 A.3d 331, 339 (Pa.Super. 2013). The Superior Court has also stated:

In expressing the reasons for its decision, 'there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. **M.J.M. v. M.L.G.,** 63 A.3d 331, 336 (Pa.Super. 2013), appeal denied, [620 Pa.710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id."**

The trial court in this matter reviewed the sixteen factors under 23 Pa.C.S.A. § 5328 as follows:

1. Weighed against Father for his conduct in restricting Mother's custodial rights by manipulating the flight schedule.

2. Not applicable.

3. Weighed in favor of both parents.

4. Weighed neutrally.

5. Weighed neutrally.

6. Each party has a sibling living with him/her but the court opined that the child should be able to spend more time with his older brother who lives with Mother, since the child had approximately 60 days with his older brother during the entire period of Mother's custodial time.

7. The court found this factor not applicable as to preference, but the court noted in factor 9 that the child has been impacted emotionally by spending less time with Mother as indicated in the judicial interview.

8. This factor was weighed as not applicable.

9. Weighed in favor of Mother.

10. Weighed neutrally.

11. Weighed against Father.

12. Weighed positive for both parties.

13. Weighed against Father.

14. Weighed as not relevant.

15. Weighed as neutral.

16. All three factors required to be weighed in this case where the child is to be relocated, are weighed in favor of Mother.

In his statement of errors complained of, Father generally contends that the trial court did not properly apply the factors in 23 Pa.C.S.§§ 5328 and 5337(h) with certain exceptions.

In assignment of error 2, Father contends the trial court erred by not applying the factors under 23 Pa.C.S.A. § 5337 (h) in detail. The court did explain its reasons for

11

granting Mother's request to relocate the child in factors 6, 7 and 16. The Superior Court has stated on more than one occasion that there is no required amount of detail in the trial court's explanation of the factors in a custody case. **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa.Super. 2013), appeal denied, [620 Pa.710], 68 A.3d 909.

In assignment of error number 4, Father contends the trial court erred in its finding under factor 1 that it "[had] no other choice than to remedy the alienation of the child from his Mother by reversing the custody schedule" despite the trial court finding under 23 Pa.C.S.A. § 5328(8) that, "[t]here was no evidence that the parents tried to alienate the affections of the minor child against either party"? It is correct that the evidence did not disclose either party directly attempting to alienate the affections of the minor child by making disparaging statements in front of the child. However, Father's actions in establishing conditions on transportation of the child to effectuate Mother's custodial rights had the effect of alienating the child from Mother. At this juncture, it is important to refer to the statement of the Superior Court in the first appeal. In a prophetic statement, the Superior Court stated:

> The trial court carefully crafted Paragraph 4 to achieve a custody schedule that would be in the Child's best interests; as written, the Child would not go without seeing Mother for more than three or four months at a time. However, the trial court cannot achieve the intended result of its Order, if Mother cannot afford the transportation costs set forth in paragraph 6. **Even one forgone opportunity for partial custody undermines the overall custody arrangement....**"
> (Emphasis added). **See White v. Malecki**, 296 A.3d at page 1218.

12

Father has conducted himself, post October 26, 2022, when this Court awarded him primary custody of the Child, in a manner that has impaired Mother's custodial rights as given to her in that Order. An example is when Mother made arrangements to have the child brought from Germany to the United States through a charity which would pay for the trip with the child and an escort. Father refused to participate in facilitating that visit of the child with Mother. Mother missed the Christmas visit of December 2022. Mother was faced with another roadblock by Father for the December 2023 Christmas visit, when he demanded that she advance transportation costs in the amount of 50% after this Court entered an Order on September 19, 2023 requiring him to pay 75% of the transportation costs for the child. Mother was required to file a Petition for Contempt and Emergency Special Relief on December 8, 2023. The Court, after hearing, ordered that Mother purchase the airline ticket and Father reimburse her 75% of the cost. After Mother purchased the ticket Father determined that the child would not be allowed to arrive for his visit with Mother until December 18, 2023. Mother lost the money she paid for that ticket and made a claim to be reimbursed at the trial held on March 4, 2024.

The Superior Court recognized the unequal financial position of the parties with Mother being in the more difficult position. Mother is on disability, while Father earns a salary of $5,718.00 per month. Most important, Father had primary custody and had control of the transportation of the child to Mother. His failure to facilitate transportation has severely impacted Mother's custodial rights.

Father has assigned error in numbers 9 through 13 regarding the factors set forth in 23 Pa.C.S.A. § 5337 subsections (h) (1), (2),(3)(6) and (7). However, a review of the

13

trial court's opinion filed on March 19, 2024 will reveal that it did exactly what the Superior Court directed, in **D.K. v. S.P.K.,** 102 A.3d 467, 477-478 (Pa.Super. 2014) where neither parent is moving but the child is. All applicable factors were reviewed, and the court found they weighed in favor of Mother.

Besides contending that the trial court erred in weighing the custodial factors in 23 Pa.C.S.A. §§ 5328 and 5337, Father contends that the trial court erred in failing to rule on his Motion to Relist his Petition for Contempt filed on July 19, 2023, relating to the transportation costs for the summer 2023 trip. (Assignment of error 14). As previously indicated the proof at the March 4, 2024 custody trial indicated Father is seeking 50% of the cost of the summer 2023 trip where his evidence showed he spent $1000.97, and Mother is seeking 75% of the cost of the December 2023 trip where her evidence showed she spent $817.97. It is respectfully submitted that failure to rule on Father's Petition for Contempt has no bearing on the determination of custody of the minor child. This is especially true since both parties have been litigating the issue of reimbursement for transportation costs for some time and Father had previously presented a claim for reimbursement of a ticket for a passenger other than the child. Due to the competing claims, a transcript was required to finally resolve the transportation cost issue. The court was of the opinion that it best to render the decision on the custody issue within the time frame required under Pa.R.Civ.P 1915.4 (d)[2] and to issue a decision on the transportation claims after a review of the transcripts

---

[2] Rule 1915.4(d) requires a decision within 15 days after the trial is completed. The trial was completed on March 4, 2019 and the decision was filed on March 19, 2019.

14

of the March 4, 2024 custody trial and those of prior proceedings.[3] The court will rule on the Petition for Contempt and claim for transportation costs once the transcript of the March 4, 2024 proceeding is filed.[4]

## CONCLUSION

It is respectfully submitted that the trial court carefully considered the factors in 23 Pa.C.S.A. §§ 5328 and 5337 and that it is in the best interests of the minor child, A.C.W., that Mother have primary custody, and the Order of March 19, 2024 should be affirmed.

The Offices of Judicial Records and Services is Directed to file this Opinion and give notice to the parties of record pursuant to Pa.R.Civ.P. 236.

BY THE COURT,

Judge Tarah Toohil

---

[3] Besides March 4, 2024 the transportation costs were considered and argued in the May 24, 2023, June 9, 2023, and December 12, 2023 proceedings.

[4] Pa.R.A.P. 1701 (2) allows the trial court to take action to enforce any order entered in the matter even though an appeal has been filed.

15